# EXHIBIT A

**EMPLOYMENT AGREEMENT**

KCG Americas LLC (collectively, with its indirect parent, KCG Holdings, Inc. and all subsidiaries and affiliated entities, "KCG" or the "Company") has offered and I have agreed to employment based on the terms and conditions of this agreement ("Agreement").

Effective as of June 1, 2015, for good and sufficient consideration, and in exchange for continued employment, certain monies, benefits, training and access to KCG confidential information and business relationships that I would not receive or have access to but for my employment with KCG, I and KCG agree to each provision of this Agreement.

1.  **Acknowledgments**. I understand and agree that:

    (a)   KCG is engaged in a diverse and evolving business and that the protection of its confidential information, competitive advantages and intellectual property is critical for its collective success and the stability of KCG's workforce.

    (b)   KCG is relying on me to act with utmost fidelity and care to promote its interests.

    (c)   In addition to my other duties and obligations specified in this Agreement, I owe KCG an obligation that arises from my special relationship with KCG to protect KCG's confidential information, competitive advantages, and intellectual property. I also understand that KCG will not permit me to work for it if I do not sign and abide by my promises and obligations in this Agreement.

    (d)   In the course of my employment for KCG, I will learn of and/or have access to Confidential Information and/or may create Developments (as those terms are defined below).

    (e)   KCG has expended considerable efforts and costs to develop its Confidential Information and other intellectual property, and to keep that information secret.

    (f)   KCG derives competitive advantages from using its Confidential Information and Developments and that any loss or erosion of those advantages is likely to have adverse consequences to KCG's business.

    (g)   KCG performs its business around the world and through exchanges and other trading platforms that are computer-based accessed through computers, and it is not necessary to be physically present in any particular location to engage in a business that competes with KCG's business.

    (h)   There is a risk of inevitable disclosure of KCG's Confidential Information if I am subsequently employed in a business similar to KCG's.

    (i)   This Agreement is supported by adequate consideration.

2.  **Employment**. My offer letter, signed in conjunction with and made a part of this Agreement (a copy of which is attached to this Agreement as Exhibit B), provides the specific terms of my employment and I accept employment with KCG and agree to perform my duties and responsibilities in accordance with my offer letter and this Agreement. I represent to KCG that I am fully qualified and have (or will promptly obtain) all required licenses, permits and authorizations to perform my duties, and that I am not subject to any employment agreement, non-competition covenant, or other restriction that prohibits or limits me from performing my duties to KCG or restricts information I can provide to KCG. I will not perform any duties that require licensing, permits or authorizations until I have obtained the necessary licenses, permits or authorizations.

3.  **Duties**. I will:

    (a)   Fully and timely perform my duties and obligations in this Agreement, and any other or additional duties and responsibilities that may be reasonably assigned to me by KCG from time to time or that may be imposed on me under applicable laws;

1

(b) Devote my exclusive, full time attention (unless as otherwise disclosed and approved by KCG and as indicated in an Amendment to this Agreement) and to provide my best efforts to competently perform my employment duties and to advance the business and interests of KCG; and

(c) Act in an honest and ethical manner in compliance with all applicable laws, ordinances, permits, licenses, governmental rules, regulations, authorizations and requirements, and comply with the policies, procedures, requirements, rules and regulations in effect at any time by KCG, any exchange, regulatory agency or self-regulatory body with authority to govern or regulate me or KCG.

4. **Compensation; Benefits**.    My compensation and other benefits will be as stated in my offer letter that is attached to this Agreement and will be payable in accordance with KCG's payroll procedures.  If my duties change, KCG may adjust my compensation up or down and will notify me before the effective date of the change.  All compensation will be subject to federal, state and local withholding taxes and other deductions as required by law.  I may be eligible to receive a bonus in an amount and on terms that are in the sole and absolute discretion of KCG (unless a specific bonus is promised in the offer letter).  I understand that KCG may decide in its sole and absolute discretion for any given period not to award me a bonus; and that any bonus does not accrue while I am employed and I must be employed by KCG on the date a bonus is paid to earn or receive one.  I will be eligible to participate in employee benefit plans, long term incentive plans, equity participation plans or any other similar plan and programs offered by KCG, but KCG has no obligation to institute, maintain or fund any specific plan or program and KCG may terminate or modify any of those plans or programs in accordance with their terms.

5. **Term and Termination**.

(a) I understand and agree that my employment with KCG is "at will."  Either I or KCG may terminate my employment at any time for any reason, or for no reason, by giving at least 15 days prior notice to the other, except for immediate termination by KCG for Cause (defined below), as specified below.   During that 15-day period, KCG may require me to assist in a transition of my duties to others, or to be on paid leave or not to report to work at KCG or perform any work duties.   My employment may be terminated by KCG for Cause immediately upon written notice to me.

(b) "*Cause*" means that any of the following occurs:

(i) I am convicted of, or plead guilty or *nolo contendere* to, any criminal charge; or in KCG's judgment, I commit any fraudulent, dishonest, immoral or unethical act with regard to KCG or its employees, independent contractors, officers, members, managers or any others;

(ii) I am intoxicated or under the influence of illegal substances while performing my employment duties;

(iii) I do not have any necessary license or qualification, or become subject to a decree or order, that prevents me from working for KCG;

(iv) In KCG's judgment, I violate (A) any regulatory or trading policy, procedure, requirement, rule or regulation of KCG, any exchange, regulatory agency or self-regulatory body with authority to govern or regulate me or KCG, (B) any material obligation in this Agreement or any other written agreement between me and KCG, or (C) any written company policy as stated in KCG's employee policy manual (as amended or revised by KCG from time to time) or the KCG Code of Business Conduct & Ethics;

(v) I intentionally and wrongfully damage material assets of KCG;

(vi) I intentionally and wrongfully disclose material confidential information of KCG; or

(vii) I intentionally and wrongfully engage in any competitive activity which constitutes a breach of this Agreement and/or a breach of my duty of loyalty.

2

(c)    I understand and agree that KCG may be required to file a U-5 or other similar forms disclosing information about my termination of employment if I work for any other broker-dealer affiliated with KCG.

(d)    Upon termination of my employment under this Agreement (regardless of the reason), KCG will pay me my accrued but unpaid base salary at its then current rate and earned but unused vacation pay, in each case only through the effective date of termination, and KCG will have no other obligations to me except to the extent required by existing statute or to the extent that payments or other obligations are owed to me under Section 6.

(e)    If I resign as an employee of KCG and KCG requests, I will participate in an interview and will inform KCG about where I plan to be employed, the nature of my duties with a subsequent employer and will respond to other questions reasonably related to these topics.

## 6.    <u>Noncompetition</u>.

(a)    During my employment with KCG and during the Protected Period (defined below) after my employment terminates (regardless of the reason) I agree not to, directly or indirectly, alone or in association with or on behalf of any other person, engage in any Competitive Activity (defined below).

    (i)    *"Protected Period"* means a period lasting six (6) months after the termination of my employment with KCG.

    (ii)    *"Competitive Activity"* means:

        (A)    Engaging in a Competitive Business (defined below) for my own benefit or for the benefit of any other person;

        (B)    Providing services to any person engaged in a Competitive Business, whether as an employee, consultant, officer, director, manager, partner, principal, agent, or in any other capacity that are similar to the services I provided for KCG or that I possessed Confidential Information about while employed by KCG; or

        (C)    Controlling (by contract, equity ownership or otherwise), investing in (except as the owner of up to 3% of the securities of a publicly traded entity) or providing other financial support to any person engaged in a Competitive Business.

    (iii)    *"Competitive Business"* means:

        (A)    Engaging in algorithmic transactions or customer facilitating transactions in any way involving any electronically tradeable product or commodity (including any security (equity or debt), derivatives, fixed income, cash, currency, or other financial instruments, or any other tangible or intangible item) through any exchange, electronic trading venue or platform, whether or not using proprietary trading methods or systems, in which KCG was engaged at the time my employment for KCG terminates, or in which KCG engaged during the 12 months preceding the termination of my employment, or in which KCG has plans to engage in at the time of the termination of my employment and that I was aware of, or possessed Confidential Information about, at the time of the termination of my employment; or

        (B)    Engaging in any activities that are similar to, competitive with or a functional substitute for activities or Confidential Information I had knowledge of and that KCG engaged in or planned to engage in at any time during the 12 months preceding the termination of my employment.

(C)     "Algorithmic transactions" means buying, selling, trading, or engaging in any other similar transaction where orders are determined by an automated model and placed on an automated basis.

(D)     "Customer facilitating transactions" means buying, selling, trading, or engaging in any other similar transaction to facilitate a customer or client order.

(b)     "KCG will pay me "Non-compete Payments" in accordance with the following:  The total Non-compete Payment shall be a collective sum equal to (i) six (6) months of my annual salary in effect at the time of my separation, which shall be paid in equal monthly installments at the end of each month of the Protected Period; and (ii) a lump sum payment, payable on the last day of the month in the month following the end of the Protected Period, equal to the greater of (x) $200,000; or (y) fifty (50%) percent of the average of my two highest annual bonus payments for two of the last three years prior to my separation.  I understand and agree that the Non-compete Payments will stop if KCG determines that I have violated any provision of this Agreement or if a court determines that any provision of Section 6, 7, 8 or 9 is unenforceable; however, if that occurs I will not be released from any other obligations that I have under this Agreement."

(c)     During the Protected Period, I will notify any other employers of my obligations under this Agreement before I begin working for them and KCG may also notify those other employers of my obligations under this Agreement.  I will inform KCG of the name, address and telephone number of a person at each subsequent employer that I report this Agreement to during the Protected Period.

(d)     Nothing in this Agreement prevents me from participating in a business that is not a Competitive Business, including any business involving an electronically tradeable product or commodity where each order is entered manually.  However, if I believe in good faith that the restrictions in this Section 6 will prevent me from obtaining a new job, I may notify KCG in writing, providing reasonable details about the proposed responsibilities of the new job (without disclosing another person's confidential information).  I will discuss with KCG whether appropriate accommodations can be made to protect KCG's interests while allowing me to take the new job and any appropriate adjustments to the payments provided for in Section 6(b).  KCG shall be under no obligation to modify the restrictions in this Section 6, but may do so in its sole and absolute discretion.

7.    **Non-solicitation.**

(a)     During my employment with KCG and during the Protected Period plus thirty (30) days after my employment terminates (regardless of the reason), I agree not to, directly or indirectly, alone or in association with or on behalf of any other person contact or solicit any client or potential client introduced to me by KCG, or that I knew of or about solely as a result of my employment with KCG, for the purpose of offering, providing or selling, products or services competitive with or similar to products or services offered by, developed by, designed by, distributed by, or sold by KCG.

(b)     For purposes of this Agreement, a "potential client" is a person, company, and/or entity that I had direct contact with or possessed Confidential Information about during the last 18 months of my KCG employment, as well as any person, company or entity I knew KCG was contacting during the last 18 months of my employment regarding the use of KCG products or services.

8.    **Non-Interference.**  During my employment and for a period of twelve (12) months after the termination of my employment with KCG (regardless of the reason), I will not, directly or indirectly, alone or in association with or on behalf of any other person:

(a)     Induce or solicit any person who is an employee or consultant to KCG to terminate their employment or engagement with KCG or modify their relationship with KCG in a way that is adverse to KCG; or hire or otherwise use the services of any person who provided services to KCG as an employee or consultant (other than services offered

4

generically to the public by such person, e.g., telecommunications services) within 12 months prior to my termination for purposes of engaging in a Competitive Business;

(b) Interfere with or induce any person to make a material adverse change in any business relationship between KCG and its suppliers, members, lenders, business partners and any other person in a business relationship with KCG where KCG has a reasonable expectation that the relationship would continue without such change; or

(c) Participate or engage in any trade or commercial disparagement of the business or operations of KCG and/or disparage the professional and/or personal lives of any individual manager, officer or employee of KCG, or give interviews, provide comment, information or opinions, positive or negative, to any publicly available media resource or employee, contractor or representative, regardless of the format and intent of that media.

9. **Confidentiality.**

(a) "*Confidential Information*" means any information of or about KCG that is not generally known to the public, including (i) information that can be used in the operation of KCG's business and is sufficiently valuable and secret to afford KCG with actual or potential economic advantage, including, but not limited to, customer or client information (ii) all forms of financial, business, employee, technical, economic, engineering and design information, plans and strategies, forecasts, know-how, systems, processes, software, algorithms, mathematical models, valuation models, trading models or strategies, information relating to modeling relationships among interest rate market instruments, trading and hedging strategies and paradigms, firmware, trading technologies, the use of trading platform software (including all front-end, middleware and exchange connectivity components or subsystems and analysis and conclusions related to KCG's technology), proprietary computer code, computer and network hardware and configurations not generally known to the public and in all events whether tangible or intangible and whether or not stored, compiled or memorialized physically, electronically, graphically, photographically or in any other media, (iii) information that is a trade secret or is subject to trade secret or similar regulation under any state or federal statute or regulation, (iv) confidential or secret information of or about other persons that is known to KCG, and (v) information labeled "confidential" or otherwise marked with a restriction on disclosure. Confidential Information does not include any information that is or becomes generally known to the public without the breach of any duty by me or any other person, or through improper means.

(b) During my employment with KCG and at all times after my employment terminates (regardless of the reason), I will:

(i) Hold all Confidential Information as a fiduciary in trust and use it only for the benefit of KCG in properly performing my employment duties for KCG;

(ii) Maintain Confidential Information in strict confidence and secrecy;

(iii) Not, except as specifically directed by KCG in performing my employment duties for KCG, communicate or disclose Confidential Information in any manner to any person within or outside KCG who is not authorized to know, use or receive such Confidential Information; and

(iv) Comply with KCG's procedures on dealing with Confidential Information and in all events use my best efforts to prevent the inadvertent disclosure of Confidential Information.

(c) Subject to applicable law, if I become subject to a valid subpoena, other order of any governmental entity or similar legal requirement that might seek disclosure of Confidential Information, I will furnish a copy of such subpoena, order or other legal requirement to KCG's General Counsel as soon as practicable, but no later than 48 hours after I receive it. I will cooperate with KCG's efforts to obtain a protective order or similar relief, and I will only disclose the minimum amount of Confidential Information necessary.

(d)     I agree that any and all Confidential Information, regardless of how stored (hard copy, stored in computer memories, microfiche, or by any other means), is the sole property of KCG. I therefore will, at any time upon KCG's request and within 48 hours of my termination of employment with KCG, deliver all Confidential Information in my possession to KCG and will not retain any originals or copies of the Confidential Information.

(e)     I will not disclose to KCG any confidential or proprietary information belonging to any other person that I am under any obligation to keep in confidence.

**10.**     **Intellectual Property Developments.**

(a)     "*Development*" means any idea, invention, discovery, improvement, innovation, mark, design, computer program, business methodology, software or code and related documentation, technique, algorithm, trading model, mathematical model, trading strategy, or work of authorship (whether or not any of the foregoing is or includes Confidential Information), that:

     (i)     I conceive, complete, or reduce to practice during my employment or within the Protected Period after the termination of my employment with KCG (regardless of the reason), whether by myself or jointly with others, and whether or not patentable, copyrightable or susceptible to other forms or protection, and that meets one or more of the following additional criteria;

          (A)     Relates to the actual or anticipated business, research or development of KCG; or

          (B)     Results from any work I do using any equipment, facilities, materials, Confidential Information, or personnel of KCG; or

          (C)     Is suggested by or results from any task assigned to me or work performed by me for or on behalf of KCG.

(b)     Except as provided in Section 10(e), I hereby irrevocably sell, assign and transfer to KCG all of my right, title and interest in and to all Developments, including any patent or other intellectual property rights that may arise and all improvements thereto. This assignment includes any right to sue for and retain past, present and future damages and royalties and seek other remedies for past or future infringement. I agree to execute any documents and take all other acts KCG requests to confirm or accomplish this assignment at any time during and after my employment with KCG and without additional compensation.

(c)     All portions of works of authorship or works capable of being copyrighted or trademarked (including documentation) that I create while employed by KCG are "works made for hire" under the U.S. Copyright Act (17 U.S.C. § 101), and shall become Developments that belong to KCG.

(d)     During my employment and (if requested) within the Protected Period after termination of my employment with KCG (regardless of the reason), I will document any Development or potential Development, and I will provide KCG with a description sufficient to enable KCG to determine whether the potential Development is in fact a Development.

(e)     I am not required to assign to KCG any Development for which I used no equipment, supplies, facility or Confidential Information of KCG and which was developed entirely on my own time and using my own resources, unless the Development relates to KCG's business or actual or demonstrably anticipated research or development, or results from any work I performed for KCG. If I developed any item of intellectual property prior to employment with KCG that I desire to exclude from this Agreement, I will initial adjacent to "Yes" beneath my signature and describe the item in EXHIBIT A to this Agreement. If the space adjacent to "No" is initialed, or if neither space is initialed, or if EXHIBIT A is incomplete, I represent and warrant that there are no items of intellectual property in which I claim an interest and intend to exclude from this Agreement.

(f)    I will respect the intellectual property rights of others and to the extent that KCG uses protected intellectual property of another person, I will make all efforts to ensure that KCG is made aware of such use and that all royalties are paid and licenses are obtained.

11.    **Access to and Retrieval of KCG Property.**

(a)    Upon termination of my employment (regardless of the reason) and at any other time at KCG's request, I will immediately deliver to KCG, or (if requested by KCG) destroy or permanently erase, all of KCG's property, including documents, handwritten notes, computer and physical files, records of Developments, keys and key cards, access codes, credit cards, tapes, disks and other electronic, optical, magnetic or other media, and all other KCG property in my possession or control (whether or not it contains, refers to or was derived from Confidential Information).

(b)    I agree that all electronic communication systems and all electronic communications and stored information transmitted, received, or contained in or over KCG's servers or other information systems are the property of KCG and are to be used for job-related purposes. This includes e-mail passing over KCG's systems and information viewed on the World Wide Web. All such data and e-mails are KCG's property. I will not use those systems and software for personal purposes contrary to KCG's interests. I will not use a code, access a file or retrieve any stored communication, other than as authorized by KCG to perform my job duties, without prior clearance from KCG.

(c)    I agree that any information, files, e-mail or other items relating to completion of my duties for KCG which I complete away from the physical offices of KCG, whether stored on a computer that is the property of KCG or not, or which is stored on other electronic media storage, or otherwise in physical or electronic format, are the property of KCG and subject to the provisions of (a) of this section.

(d)    To ensure that the use of KCG's information systems, voice mail systems, equipment and software, and other electronic communications systems is consistent with KCG's policies and interests, I consent to KCG and its authorized representatives monitoring, retrieving, viewing and analyzing my use of those systems, equipment, software, and all information, data, voice mails and e-mails, at any time without any additional notice to or consent by me (including by reading e-mails or other electronic communications I receive or transmit or information I view on the World Wide Web).

(e)    Upon request, I agree to certify in writing to KCG that I am in compliance with Sections 6, 7, 8, 9 and 10 of this Agreement at any time requested by KCG, upon the termination of my employment with KCG, and at any time up to the fourth anniversary of the date of my termination of employment.

12.    **Dispute Resolution.** If applicable regulations of FINRA or another exchange or self-regulatory organization that governs KCG and me impose mandatory arbitration procedures, KCG and I will comply with those other arbitration procedures instead of the other provisions of this Section 12. In the absence of another dispute resolution procedure that mandatorily applies, KCG and I agree to the following dispute resolution procedures as the exclusive method of resolving any claim, controversy or dispute of any nature (whether arising out of this Agreement, any unit agreement, or otherwise) that KCG or I may have during my employment or at any time after my employment terminates (regardless of the reason) against or involving the other (or that I have against KCG's managers or officers), including all statutory, contractual, and common law claims ("Disputes"):

(a)    Any Dispute that arises from or in any way relates to the grant, purchase, sale or holding of membership units, shares, or stock of KCG will be governed by the terms of the specific written agreement between KCG and me governing those units and by KCG's Operating Agreement and will not be subject to Sections 12(c) or 12(d).

(b)    Any Dispute that arises from or in any way relates to Sections 6, 7, 8, 9, 10 or 11 of this Agreement will not be subject to mediation but will be governed by Section 12(d) below.

(c)    All other Disputes will be resolved as follows:

(i)  The complaining party will submit a written statement of any Dispute to the other party and request a meeting to resolve the Dispute through informal discussions.

(ii)  If the parties to this Agreement are not able to resolve the Dispute within 21 days after delivery of the request for a meeting, prior to initiating litigation under Section (d) below, either party must submit the Dispute for mediation with JAMS at the location closest to the Employee's primary workplace. Mediation shall be a condition precedent to litigation under Section (d) below.  KCG will pay the fees and costs of JAMS and the mediator.  The mediation process will be non-binding.  I understand that I can find information about JAMS at *www.jamsadr.com*.  Either party may begin mediation by filing a written demand for mediation with JAMS, with a copy to the other party.  The parties will cooperate with JAMS and with one another in promptly selecting a mediator from JAMS' panel of neutrals, and in scheduling the mediation proceedings.  All offers, promises, conduct and statements, whether oral or written, made in the course of the mediation by any of the parties, their agents, employees, experts and/or attorneys, and by the mediator or any JAMS employees, are confidential, privileged and inadmissible for any purpose, including impeachment, in any litigation or other proceeding involving the parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the mediation.

(d)  If (i) a Dispute subject to Section 12(c) is not resolved within 30 days from the date it is submitted to mediation, or (ii) the Dispute is subject to Section 12(b), then either party may file a lawsuit as provided in any State or Federal court located in the State of New Jersey and the Parties each consent to the jurisdiction of those courts and agree that venue there is proper and is the only venue for the Dispute.  With respect to 12(d)(ii) and any applicable regulation of FINRA or another exchange or self-regulatory organization that imposes mandatory arbitration, KCG or I may file a lawsuit seeking a temporary restraining order, a  preliminary or permanent injunction, or other equitable relief or provisional remedies for any violation of Sections 6, 7, 8, 9, 10 or 11 without waiving the right to compel the dispute resolution procedures stated in Section 12 and the parties agree not to defend against any application for equitable or provisional relief on the ground that any meetings, mediation or arbitration is pending.

(e)  The provisions of Section 12 may be enforced, and judgment on any arbitration award may be entered, by any court of competent jurisdiction.

13.  **Miscellaneous**.

(a)  I understand and agree that if I am formally or technically employed by a professional employer organization but providing services for KCG, I will nonetheless comply with all of the terms of this Agreement as if KCG was my direct employer and all provisions in this Agreement that benefit the employer are for the benefit of KCG.

(b)  I understand and agree that the restrictions upon me and my covenants, duties and obligations to KCG in this Agreement are necessary to protect KCG's legitimate business interests and Confidential Information.  I also agree that the restrictions are reasonable in scope and duration.

(c)  I agree that it would be difficult to fully compensate KCG for damages for any violation of Sections 6, 7, 8, 9, 10 and/or 11 of this Agreement.  I further agree that KCG would not have an adequate remedy solely at law and would suffer irreparable harm as a result of any violation of Sections 6, 7, 8, 9, 10 and/or 11 of this Agreement.  Thus, and as a stated in 12(d) of this Agreement, KCG  shall be entitled to equitable relief, including injunctive relief, against any actual or threatened breach of Sections 6, 7, 8, 9, 10 and/or 11 of this Agreement and will not be required to provide a bond or other security as a condition for such relief, nor will KCG have any liability if the relief is denied, modified, or vacated.  Neither the right to obtain such relief nor the obtaining of that relief shall preclude KCG from any other remedy or relief, whether at law, in

8

equity, or otherwise, including an award of damages.  I agree that the duration of the restrictions in Sections 6, 7 and/or 8 will be extended by the amount of time in which I am in violation of that Section.

(d)     If I am found to be in breach or default in the full or timely performance of any of my covenants, duties or obligations as set forth in this Agreement, I will be liable for, and agree to promptly pay to KCG upon demand, all of the costs and expenses KCG incurs as a result of or arising from such breach or default, including, reasonable attorneys' fees and expenses and court costs.  KCG may offset any amounts due from me under the terms of this Agreement against any payments to become due by KCG to me under this Agreement any other agreement with KCG or otherwise to the fullest extent permitted by law.

(e)     This Agreement shall be governed by and interpreted in accordance with New Jersey law (without regard to its conflict of law rules).

(f)     If any provision, or any part of any provision, of this Agreement, including the provisions found in Sections 6, 7 and 8 of this Agreement, are found by an arbitrator (if applicable) or by a court with personal and subject matter jurisdiction to be unreasonably broad or otherwise unenforceable in any respect, the provision shall be modified to most closely express the parties' intent and enforced as modified.  If a court (or arbitrator, if applicable) refuses, however, to enforce a provision hereof either as drafted or modified, then that provision will be disregarded and all of the remaining provisions of this Agreement will still be enforced.

(g)     This Agreement (which includes Exhibits) is the exclusive statement of my agreement with KCG regarding the subjects covered by this Agreement and supersedes and cancels all prior oral and written offers (except for the offer letter attached to this Agreement and incorporated herein by reference), agreements, promises, and representations as to the same subject matter.  In entering into this Agreement, I have not relied on any representation, inducement or agreement made by KCG or anyone acting on KCG's behalf that is not fully and expressly set out in this Agreement.

(h)     I agree that all of my obligations under this Agreement, and other agreements with KCG survive the termination of my employment with KCG.  The existence of any claim or cause of action that I may have against KCG, whether or not predicated on this Agreement, shall not constitute a defense to the enforcement of this Agreement by KCG.

(i)     As used in this Agreement, the term "person" includes individuals, entities, organizations and groups and the term "including" or "includes" means "including without limitation."  As used in Sections 5, 6, 7, 8, 9, 10, and 11, and elsewhere in this Agreement or any other agreement between KCG and me, the phrase "termination of my employment under this Agreement (regardless of the reason)" or words of similar import refers to termination of employment by me or KCG at any time, for any reason (including for Cause), or for no reason.

(j)     No waiver or modification of any provision of this Agreement or any rights or obligations of either party hereunder will be effective unless made pursuant to a writing signed by the party against whom the waiver or modification is enforced.  A waiver or modification will be effective only in the specific instance and for the specific purpose of that writing.

(k)     KCG may assign and transfer all of its rights under this Agreement.  Because the Agreement requires my personal services, I understand that I may not assign any part of it.  This Agreement shall be binding on and inure to the sole benefit of the parties, including as third party beneficiaries, the affiliates of KCG who may enforce this Agreement and collect damages hereunder, and their permitted successors and assigns.

(l)     I represent that I have fully read and understand the terms of this Agreement and have carefully considered its obligations, and have had adequate opportunity to review this Agreement with an attorney, and as such this Agreement will not be strictly construed for or against either party as the drafter.

(m)     This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.

(n)     Certain additional terms of my employment may be set forth in the Addendum to this Agreement, but only if the "Addendum" box beneath my signature is marked "yes" and there is an Addendum attached to this Agreement that has been initialed by both parties.

(o)     The intent of the parties is that payments and benefits under this Agreement be exempt from, or comply with Section 409A of the Internal Revenue Code (the "Code"), and accordingly, to the maximum extent permitted, this Agreement shall be interpreted and administered to be in accordance therewith. Notwithstanding anything contained herein to the contrary, I shall not be considered to have terminated employment with KCG for purposes of any payments under this Agreement which are subject to Section 409A of the Code until I would be considered to have incurred a "separation from service" from KCG within the meaning of Section 409A of the Code. Each amount to be paid or benefit to be provided under this Agreement shall be construed as a separate identified payment for purposes of Section 409A of the Code, and any payments described in this Agreement that are due within the "short term deferral period" as defined in Section 409A of the Code shall not be treated as deferred compensation unless applicable law requires otherwise. Without limiting the foregoing and notwithstanding anything contained herein to the contrary, to the extent required in order to avoid accelerated taxation and/or tax penalties under Section 409A of the Code, amounts that would otherwise be payable and benefits that would otherwise be provided pursuant to Agreement during the six-month period immediately following my separation from service shall instead be paid on the first business day after the date that is six months following my separation from service (or, if earlier, my death). To the extent required to avoid accelerated taxation and/or tax penalties under Section 409A of the Code, amounts reimbursable to me under this Agreement shall be paid to me on or before the last day of the year following the year in which the expense was incurred and the amount of expenses eligible for reimbursement (and in-kind benefits provided to you) during any one year may not effect amounts reimbursable or provided in any subsequent year. KCG makes no representation that any or all of the payments described in this Agreement will be exempt from or comply with Section 409A of the Code and makes no undertaking to preclude Section 409A of the Code from applying to any such payment. I understand and agree that I shall be solely responsible for the payment of any taxes and penalties incurred under Section 409A.

*Signature page follows*

10

WITNESS WHEREOF, KCG Americas LLC and I have entered into this Agreement effective as of ___JULY, 16__, 2015.


KCG Americas LLC

By: _____
Name: Jerry Davis
Title: Chief Human Resources Officer

Address:

One Liberty Plaza
165 Broadway
19th Floor
New York, N.Y. 10006

Employee Signature: _____
Print Name: ___ROHIT M. KHANDEKAR___

Address: **REDACTED**

EXHIBIT A disclosures (initial one):
Yes _____
No __Rmk__

ADDENDUM included (initial one):
Yes _____
No __Rmk__

*Signature Page to Employment Agreement*

<u>EXHIBIT A</u>

The following is a complete list of all intellectual property, including a brief description thereof (without revealing any confidential or proprietary information of any other person) which I developed prior to my employment with KCG:

<u>ADDENDUM</u>

Set forth below are additional terms to my employment with KCG.  In the event that any provision of the body of the Agreement and this Addendum conflict, the terms of this Addendum will govern.

Indicate approval by initialing:          KCG

                                          Employee