USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JAN 1 0 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KCG Holdings, Inc. and KCG Americas LLC,

    Plaintiffs,

–v–

Rohit Khandekar,

    Defendant.

17-cv-3533 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

This case involves allegations that Defendant Rohit Khandekar used and accessed confidential and proprietary trade secret information of Plaintiffs KCG Holdings, Inc. and KCG Americas LLC (collectively, "KCG") without authorization to do so. KCG alleges violations of the Defend Trade Secrets Act of 2016, the Computer Fraud and Abuse Act, and New York state law regarding the misappropriation of trade secrets, and breach of Khandekar's employment agreement. Dkt. No. 80 (Amended Complaint) at 1. On October 10, 2017, Khandekar filed a motion to stay the case. Dkt. No. 99. For the reasons explained below, the Court grants that motion.

I.   BACKGROUND

    A. The Instant Action

From April 2012 through March 2017, Khandekar worked as a quantitative strategist for KCG using and developing mathematical and statistical models ("Predictors") to predict the prices of financial instruments. *See* Dkt. No. 101 (Khandekar Dec.) at ¶ 2. Plaintiffs allege that while Khandekar was employed by KCG but searching for employment with one of KCG's competitors, he improperly accessed and copied KCG's proprietary trading models. Amended Complaint at 1-2. Specifically, Khandekar allegedly sent emails from his KCG work account to

1

his personal email address containing proprietary research and accessed, reviewed, and copied Predictors that he was not authorized to access. *See id.*

On May 11, 2017, Plaintiffs filed suit against Khandekar alleging misappropriation of proprietary information in violation of federal and state law, as well as breach of contract, and they sought a temporary restraining order, which the Court denied. *See* Dkt. No. 1; Dkt. No. 26, Ex. 1; Dkt. No. 9 at 8:19-20. On June 22, 2017, Plaintiffs filed a motion for a preliminary injunction to, inter alia, enjoin Khandekar from using or accessing KCG confidential information. *See* Dkt. No. 24. The parties resolved that motion by entering into a stipulation on July 5, 2017. *See* Dkt. No. 39.

Plaintiffs filed an amended complaint against Khandekar on August 28, 2017. *See* Amended Complaint.

### B. The Arbitration Proceeding

While employed at KCG, Khandekar participated in the Amended and Restated Equity Incentive Plan (the "Plan"). Khandekar Dec. at ¶ 9. The Plan contains the following arbitration clause:

> [A]ny dispute, controversy or claim between the Company and a Participant, arising out of or relating to or concerning the Plan or any Award shall be finally settled by binding arbitration in Newark, New Jersey before, and in accordance with the rules then obtaining of, the New York Stock Exchange, Inc. ("NYSE") or, if NYSE declines to arbitrate the matter (or if the matter otherwise is not arbitrable by it), the American Arbitration Association (the "AAA") in accordance with the commercial arbitration rules of the AAA.

Dkt. No. 102, Ex. D at ¶ 14.14. The Restricted Stock Unit Agreement provides that stock units will be forfeited if the grantee breaches or otherwise takes action prohibited by an offer letter, employment agreement, or other agreement that the grantee has with KCG. *See* Dkt. No. 102, Ex. E at ¶ 4.

Under the Plan, KCG granted Khandekar 11,579 restricted stock units. Khandekar Dec. at ¶ 10. Of those units, 8,909 were unvested when Khandekar left KCG. *Id.* at ¶ 11.

2

In July 2017, KCG merged with Virtu Financial, Inc. *See* Dkt. No. 102, Ex. G. As a result of the merger, Khandekar was scheduled to receive a cash payment of $178,180 in exchange for the 8,909 unvested restricted stock units. Khandekar Dec. at ¶¶ 15-16. Instead, KCG/Virtu eliminated Khandekar's unvested restricted stock units but did not issue him any cash payment. *Id.* at ¶ 17. In addition, in a letter dated August 4, 2017, Virtu demanded that Khandekar return $199,998.11, the amount that he had previously received for the vested stock units. Dkt. No. 102, Ex. F. In an email dated August 8, 2017, Virtu explained that Khandekar was not entitled to the value of his vested or unvested units because he had "violated his confidentiality and proprietary information obligations." *See* Dkt. No. 102, Ex. G.

In response to Virtu's demand for payment, Khandekar's counsel wrote to Virtu on August 14, 2017, and noted that if Virtu or another entity "intend[ed] to initiate legal action against Mr. Khandekar pursuant to the Plan, . . . paragraph 14.14 of the Plan requires arbitration." Dkt. No. 102, Ex. H. He stated that Khandekar "reserve[d] his right to seek dismissal and/or a stay of either the Federal Action or the arbitration." Dkt. No. 102, Ex. H.

On October 2, 2017, Khandekar's counsel wrote to KCG demanding payment for Khandekar's unvested restricted stock units. Dkt. No. 102, Ex. I. When Khandekar received no response, he served a demand for arbitration pursuant to the Plan on October 4, 2017. Dkt. No. 102, Ex. J. On October 10, 2017, Khandekar filed a motion to stay this action in light of his arbitration demand. *See* Dkt. No. 99.

## II. LEGAL FRAMEWORK

"Federal policy strongly favors arbitration as an alternative means of dispute resolution." *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997). The Federal Arbitration Act provides that if "any suit or proceeding" is brought in a United States court

"upon any issue referable to arbitration under an agreement in writing for such arbitration," the court "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

In addition, courts have "inherent power" to grant stays when the resolution of the arbitration may be determinative of the issues in the case. *See Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991). "[T]he movant bears a heavy burden of showing necessity for the stay," and "the court is required to tailor its stay so as not to prejudice the non-moving litigant unduly." *Id.* As another judge on this Court has explained, "It makes no sense to stay proceedings pending the end of the arbitration when any outcomes of the arbitration with which the moving defendants disagree will have to be relitigated in the federal courts anyway." *Am. Shipping Line, Inc. v. Massan Shipping Indus., Inc.*, 885 F. Supp. 499, 502 (S.D.N.Y. 1995). On the other hand, "claims are appropriately stayed when they involve common issues of fact and law with those subject to arbitration or when the arbitration is likely to dispose of issues common to" the arbitrated claims and the claims in the court proceeding. *Moore v. Interacciones Global, Inc.*, 94-CV-4789, 1995 WL 33650, at *7 (S.D.N.Y. Jan. 27, 1995); *see also Winter Inv'rs, LLC v. Panzer*, No. 14-CV-6852, 2015 WL 5052563, at *11 (S.D.N.Y. Aug. 27, 2015) ("A discretionary stay is particularly appropriate where there is significant factual overlap between [the claims in the court proceeding and the arbitrated claims]."). In other words, a discretionary stay is appropriate if considering the claims at issue would require the court to "duplicate efforts" of the arbitrator. *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 111 (S.D.N.Y. 2017).

However, "a party waives its right to arbitration when it engages in protracted litigation that prejudices the opposing party." *PPG Indus., Inc.*, 128 F.3d at 107. In determining whether

a party has waived its right to arbitration, courts consider the following factors: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010) (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 229 (2d Cir. 2001)). Prejudice can be substantive or can take the form of excessive cost and delay. *Id.*

### III. DISCUSSION

The Court need not decide whether a mandatory stay is required in this case because, even if it were not, the Court would exercise its inherent authority to grant a discretionary stay because of the "significant factual overlap" between the proceedings. *See Winter Inv'rs, LLC*, 2015 WL 5052563, at *11.

At issue in the arbitration is whether Khandekar's unvested restricted stock units were properly canceled, a question that turns on whether Khandekar breached or violated his employment agreement by improperly accessing or misusing confidential or proprietary information. *See* Dkt. No. 100 (Khandekar Memo) at 10; Dkt. No. 102, Ex. E. Whether Khandekar breached his employment agreement is directly relevant to KCG's breach of contract claim and could also affect its Defend Trade Secrets Act, Computer Fraud and Abuse Act, and misappropriation of trade secrets claims. KCG emphasizes that the arbitrator could conclude that Khandekar sent confidential and proprietary information to his personal email account, thereby violating KCG policies, without reaching the question whether Khandekar violated the Defend Trade Secrets Act or the Computer Fraud and Abuse Act, committed common law misappropriation, or breached his employment agreement. *See* Dkt. No. 103 (KCG Memo) at 15. Although KCG is correct that the legal claims in the arbitration and this proceeding are different, the core issue is substantially the same—whether Khandekar used or accessed

5

confidential and proprietary trade secret information in an unauthorized manner. It is therefore just as possible, if not more likely, that the arbitrator could make a factual determination that would resolve the issues in this case. Indeed, at the status conference on October 6, 2017, Khandekar's counsel confirmed that if the arbitration resolved the issue whether Khandekar "improperly accessed files while he was an employee at KCG," that determination would be binding in this litigation, and he stated that if the arbitrator decided that issue against Khandekar, KCG could "could come back [to this Court] and they could prosecute their action for damages, they can ask the Court for summary judgment." Dkt. No. 107 at 7:20-8:20; *see also* Dkt. No. 107 at 8:21-25 ("The Court: So the arbitrator decides that against you, then there's liability here to be found based on preclusion of the defendant, and it is only a question of damages going forward. [Khandekar's Counsel]: That's correct, your Honor.").

Furthermore, granting the stay will not unduly prejudice KCG. The parties entered into a stipulation enjoining Khandekar from using or accessing KCG's confidential information, *see* Dkt. No. 39, so KCG does not face a threat of continuing harm from Khandekar as a result of a stay. Moreover, because discovery has been completed, there is little risk that evidence would be lost or destroyed as a result of a stay. *Cf. Am. Shipping Line, Inc.*, 885 F. Supp. at 503.

Finally, the Court rejects KCG's contention that Khandekar has waived his right to seek a stay of this proceeding. As Khandekar notes, KCG does not suggest that Khandekar has waived his right to arbitrate the claims at issue. *See* Dkt. No. 105 (Khandekar Reply) at 3. Thus KCG's argument that it will be prejudiced because extensive discovery has occurred, and discovery in federal court is often broader than that in an arbitration proceeding, *see, e.g.*, KCG Memo at 13, is inapposite. Even assuming that the extent of discovery that has occurred prejudices KCG in the arbitration proceeding, refusing to stay the instant action would not eliminate that prejudice because the arbitration would still go forward. And, as explained previously, allowing both actions to proceed simultaneously would be inefficient because there is a significant possibility that the arbitration proceeding would resolve the central issues in this case. Moreover, although KCG contends that Khandekar excessively delayed in filing a motion for a stay, *see* KCG Memo

at 11, Khandekar filed his motion approximately five months after this action was filed, two months after learning that he would not receive payment for his vested stocks, and one week after demanding payment for his unvested restricted stock units. The Court does not consider that delay excessive, particularly in light of the fact that KCG, not Khandekar, filed the instant action.

## IV. CONCLUSION

Given the significant factual overlap in the instant action and the arbitration proceeding, Khandekar's motion for a stay is GRANTED. All conferences and deadlines are adjourned sine die. This resolves Docket Number 99.

In light of the stay, the Court administratively denies KCG's motion for summary judgment, Dkt. No. 114, and Khandekar's cross motion for summary judgment, Dkt. No. 129, with leave to refile. This resolves Docket Numbers 114 and 129.

The parties are ordered to provide an update to the Court within 90 days of the date of this Order, or, if the arbitration proceeding reaches resolution before then, within one week after the arbitration proceeding is resolved. If the arbitration proceedings have not been concluded after 90 days of the date of this Order, KCG may move to vacate the stay.

SO ORDERED.

Dated: January 17, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge