**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KCG HOLDINGS, INC. and KCG AMERICAS LLC, | ) ) ) |
| Plaintiffs, | ) Civil Action No. 17 CV 3533 (AJN) ) (GWG) |
| -against- | ) ) |
| ROHIT KHANDEKAR | ) **MEMORANDUM OF LAW** |
| Defendant. | ) ) ) ) ) |

**KCG HOLDINGS, INC.'S AND KCG AMERICAS LLC'S**
**OPPOSITION TO DEFENDANT ROHIT KHANDEKAR'S MOTION TO ENFORCE**
<u>**SO-ORDERED STIPULATION**</u>

Dated: January 24, 2020

BAKER & MCKENZIE LLP

452 Fifth Avenue
New York, New York 10018
(212) 626-4100

*Attorneys for Plaintiffs*
*KCG Holdings, Inc. and KCG Americas LLC*

## <u>TABLE OF CONTENTS</u>

I.  PRELIMINARY STATEMENT ................................................................................. 1

II.  FACTUAL BACKGROUND ................................................................................. 3

    A.  The Lawsuit and Stipulation. ................................................................. 3

    B.  Khandekar Cannot Show That KCG Agreed to Pay T&M Costs; and He
        Unabashedly Requests That KCG Be Responsible for T&M Expenses
        Incurred *Before* The Parties Even Contemplated the Stipulation, and *After*
        Kroll Completed Its Stipulation Work. ................................................. 6

    C.  Khandekar Cannot Pass His TR Expenses Onto KCG. ........................ 10

III.  ARGUMENT ................................................................................. 10

    A.  KCG Did Not Contract to Pay for Khandekar's Defense Costs. .......... 10

    B.  Assuming, Arguendo, That Khandekar Can Show KCG Agreed to Pay For
        Certain T&M and/or TR Services, His Motion Must Still Be Denied As
        The Time Entries Are Indecipherable. ................................................. 12

    C.  Khandekar's "Accounts Stated" Theory is Inapposite. ........................ 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Leon v. New York City Employees' Retirement System*,
  240 A.D. 2d 186 (N.Y. App. Div. 1st Dept. 1997)................................................................11

*Matter of Martin H. Bauman Assoc. v H & M Intl. Transp.*,
  171 A.D.2d 479 (N.Y. App. Div. 1st Dept. 1991)................................................................13

*Meadowbrook-Richman, Inc. v. Associated Fin. Corp.*,
  325 F. Supp. 2d 341 (S.D.N.Y. 2004)..................................................................................13

*Trans-Pro Logistic, Inc. v. Coby Elecs. Corp.*,
  No. 05 CV 1759 (CLP), 2012 U.S. Dist. LEXIS 19899 (E.D.N.Y. Feb. 15,
  2012) .......................................................................................................................................13

**Statutes**

Defend Trade Secrets Act of 2016....................................................................................................4

Plaintiffs KCG Holdings Inc. and KCG Americas LLC ("KCG"), hereby submit this Memorandum of Law in Opposition to Defendant Rohit Khandekar's ("Khandekar") Motion to Enforce the So-Ordered Stipulation.

## I.   PRELIMINARY STATEMENT

In the instant motion, Khandekar claims that a June 28, 2017 Stipulation (ECF No. 39) (the "Stipulation")—entered into to allow a mutually-agreed upon third-party IT vendor to conduct a forensic review of Khandekar's electronic devices—somehow requires KCG to pay $36,548.00 in fees charged by his personally retained testifying technical expert, T&M Protection Resources ("T&M"), and his e-discovery platform provider, Thomson Reuters ("TR"). Khandekar's position is logically and textually unsound and should be rejected.

*First*, a plain reading of the Stipulation belies Khandekar's unfounded interpretation. Paragraph 2 of the Stipulation states that Khandekar and KCG will "retain . . . a qualified third party forensic IT vendor" to assess Khandekar's device and cloud storage data as outlined in the Stipulation. (ECF No. 39.) Paragraph 2 later specifies that KCG "will bear all costs associated with all third-party tasks outlined in this paragraph." (*Id.* ¶ 2.) The "costs" KCG agreed to cover are those incurred by the "third party forensic IT Vendor" in fulfilling the "third-party tasks" outlined in the Stipulation. And the "third-party tasks" are those that the Stipulation specifies the IT vendor must perform. (*See* ECF No. 39, ¶ 2 (the "IT Vendor shall assess the forensic images"; the "IT Vendor shall then conduct a forensic review"; and the "IT Vendor shall . . . provide Plaintiffs with the Responsive Documents.").) In a June 30, 2017 email to Khandekar's counsel, KCG stated the following:

> Pursuant to Section 2 of the June 28 stipulation, KCG proposes Kroll as the third party forensic IT vendor. Kroll is available to commence work immediately. Please let us know if Defendant has any objection to Kroll. If not, we can have Kroll contact you so it can obtain the forensic images.

> Please let us know as soon as possible today whether Defendant agrees to Kroll as
> the third party forensic IT vendor.

(Kaplan Decl., Ex. 1.) That same day, Khandekar's counsel agreed to retain Kroll as the "third

party forensic IT Vendor" and KCG has since incurred and paid approximately $217,750 to

Kroll for its work under the Stipulation. (*Id.*, ¶ 11.)  Because KCG and Khandekar clearly only

agreed to Kroll as the third party IT vendor, KCG is not responsible for any T&M or TR costs.

*Second*, the T&M and TR invoices all reflect basic e-discovery tasks any defendant must

undertake to preserve evidence and respond to discovery. Indeed, Khandekar demands that KCG

pay T&M $6,322.50 for services rendered over one month *before* the parties agreed to the

Stipulation, and $2,137.00 for T&M work up to two months *after* Kroll submitted its report. The

remaining $22,720.50 in T&M invoices reflect "technical consulting" on keyword searches,

remote database management, manual document review, document uploading, and calls with

Khandekar's counsel, all work falling outside the Stipulation terms. Likewise, Khandekar

demands that KCG pay $5,386.86 to TR because he unilaterally decided to use an e-discovery

platform to review documents. But the Stipulation required retention of *one* third-party IT

Vendor (Kroll) to retrieve and analyze relevant data. KCG should not be required to pay for

Khandekar's additional defense costs.

*Third*, even if Khandekar can somehow show that KCG stipulated that it would be

responsible for some T&M and/or TR costs (which he cannot), Khandekar has not presented any

evidence that KCG agreed to satisfy the expenses he submitted to the Court. Indeed, the itemized

invoices only show routine costs that any defendant would incur in a trade secret and breach of

contract case to satisfy its preservation and discovery obligations and to prepare a defense, not

tasks that KCG agreed either side needed to do to effectuate the Stipulation.

In sum, any defendant would have imaged his devices to preserve evidence. Any defendant would have retained a personal technical expert to assist with his defenses. And any defendant would use an e-discovery platform to review voluminous documents. The Stipulation does not cover these standard litigation expenses. It covers specific forensic tasks to be performed on specific devices, and identifies one third party IT vendor to do the job, which the parties agreed would be Kroll.  As such, the Court should deny Khandekar's ill-founded motion in full.

## II.   FACTUAL BACKGROUND

### A.   The Lawsuit and Stipulation.

Defendant Khandekar is a former KCG employee who orchestrated multiple security breaches to wrongfully access, copy and review KCG's "Predictors," mathematical models that are designed to forecast price movements in securities markets and utilized in KCG's electronic trading strategies in its market-making business. KCG takes significant measures to protect these trade secrets, which provide KCG with a competitive advantage worth millions of dollars annually.

Khandekar surreptitiously gathered these Predictors in anticipation of his resignation from KCG and his subsequent employment at Two Sigma Securities, LLC ("Two Sigma"), a direct competitor of KCG. Khandekar authored and executed a number of computer programs ("scripts") designed to search for unencrypted Predictors stored in the directories of his colleagues. However, Khandekar was not permitted to view the inner workings of these Predictors. Khandekar therefore took steps to keep his systematic gathering, copying and review of these Predictors secret, including by storing the stolen Predictors in a hidden personal

3

directory, then deleting them and wiping his laptop computer clean before returning it to KCG upon his resignation.

On May 11, 2017, KCG filed suit against Khandekar for violations of the Defend Trade Secrets Act of 2016, violation of New York state law regarding the misappropriation of trade secrets, and breach of his employment agreement. Simultaneously with the filing of its Complaint, KCG filed an emergency motion for the entry of a temporary restraining order and preliminary injunction. In its preliminary injunction submissions, KCG requested expedited discovery, stating that:

> KCG must be permitted to inspect and image, all computers and other electronic devices, including, but not limited to, computers, hard disk drives, floppy disk drives, removable storage devices (e.g., thumb drives), CDs, DVDs, PDA's, cell phones, blackberries and/or all other similar electronic storage devices belonging to, under the control of, accessible to, or operated by Khandekar on which KCG's confidential and trade secret information of any kind resides or may have resided so that KCG can understand the full extent of his misappropriation.

(ECF No. 25, p. 22.)

On June 28, 2017, Khandekar and KCG entered into a Stipulation, enjoining Khandekar from using, possessing, and disclosing KCG's trade secrets and confidential information. (ECF No. 39.) The Stipulation further provided a protocol for retrieving and reviewing data on Khandekar's personal devices and data storage accounts, memorializing the parties' agreement on procedures for assessing, reviewing, and producing such data. (*Id.*, ¶ 2.)

Specifically, the Stipulation required KCG to "retain, subject to the reasonable objection of Defendant, a qualified third party forensic IT Vendor" and outlined the process the parties and the third party IT vendor must follow in analyzing, reviewing, and producing documents imaged from Khandekar's devices and electronic storage accounts. (*Id.*) Pursuant to Paragraph 2 of the Stipulation:

4

- The third party IT vendor must "assess the forensic images of [Khandekar's] Personal Electronic Devices and Electronic Data Storage."

- The third party IT vendor must then "conduct a forensic review of such information using standard forensic protocols, and shall search the information using mutually agreed upon search terms."

- The third party IT vendor must then produce documents generated from key word searches agreed to by the parties and deliver them to "Defendant for review for privilege and personal information."

- Within ten days from receiving the documents from the third party IT vendor, "Defendant" was required to "identify to the IT Vendor which Responsive Documents may be turned over to Plaintiffs, and the IT Vendor shall forthwith provide Plaintiffs with the Responsive Documents so identified . . . ."

- The third party IT vendor must then permanently delete all forensic images on Khandekar's personal electronic devices and personal data storage accounts.

(*Id.*)

In addition, and crucially, the Stipulation assumed that "Defendant has imaged all Personal Electronic Devices and Electronic Data Storage in his possession, custody, and control."  (*Id.*) This, of course, is standard discovery protocol. The Stipulation went on to note that if "new or additional imaging of Defendant's Personal Electronic Devices or Electronic Data Storage is necessary, the IT Vendor will be provided access to Defendant's Personal Electronic Devices and Electronic Data Storage for the purpose of imaging, collecting, and copying the information contained therein." (*Id.*)

Finally, the Stipulation provided that KCG must "bear all costs associated with all third-party tasks outlined in [Paragraph 2.]" (*Id.*) The only "third-party tasks" outlined in Paragraph 2 are those involving the designated third party IT vendor. The Stipulation makes no reference to any other third parties who must perform work under the Stipulation. (*See id.*)

5

On June 30, 2017, KCG counsel e-mailed Khandekar's counsel (entitled "(Time Sensitive)

KCG: Non-Privileged Retention of Third Party IT Vendor") recommending a third party IT

vendor for the tasks contemplated by the Stipulation:

> Pursuant to Section 2 of the June 28 stipulation, KCG proposes retaining Kroll as
> the third party forensic IT vendor. Kroll is available to commence work
> immediately.  Please let us know if Defendant has any objection to Kroll.  If not,
> we can have Kroll contact you so it can obtain the forensic images.
>
> Please let us know as soon as possible today whether Defendant agrees to Kroll as
> the third party forensic IT vendor.

(Kaplan Decl., Ex. 1.)

Khandekar's counsel responded "[n]o objection" that same day. (*Id*.) KCG in turn retained

Kroll to perform the forensic imaging and analysis under the Stipulation. Kroll submitted its

forensic report on August 10, 2017, with KCG ultimately paying Kroll $217,750 for its services

under the Stipulation. (*Id*., ¶ 11.)

> **B.    Khandekar Cannot Show That KCG Agreed to Pay T&M Costs; and He
> Unabashedly Requests That KCG Be Responsible for T&M Expenses
> Incurred *Before* The Parties Even Contemplated the Stipulation, and *After*
> Kroll Completed Its Stipulation Work.**

The plain language of the Stipulation and the June 30, 2017 email exchange between

counsel identifying Kroll as the third party IT vendor clearly establishes that the parties never

contemplated that T&M would be the third party IT vendor, that T&M would perform any

services under the Stipulation, or that if Khandekar requested T&M to perform services for him

related to the Stipulation, that KCG would be responsible for those costs. Indeed, the fact that

Khandekar seeks fees and costs both before and after the Stipulation, and that he fails to itemize

the alleged "stipulation" costs, shows the suspect nature of his request.

6

On May 10, 2017, *even before KCG initiated this action*, Khandekar contacted T&M Associate Director of Incident Response Kyle Poppenwimer to inform him of "several devices that we need imaged tomorrow." (Kaplan Decl., Ex. 2.) On May 11, the day KCG filed its Complaint and six weeks before the entry of the Stipulation, T&M sent Khandekar's counsel a retention agreement, which Khandekar's counsel signed and sent back on May 18, 2017. (*Id.*, Exs. 2-3.) Presumably, per Khandekar's instruction, T&M imaged Khandekar's personal devices on May 11.

Incredibly, Khandekar maintains that KCG must pay $6,322.50 for T&M work between May 10 and May 19, 2017, fees incurred over one month *before* the Parties even entered into the Stipulation. (Lipman Decl., Ex. B, p. 1, ECF No. 166-2.)  Of course, it is temporally impossible for KCG to agree to cover any vendor fees prior to even discussing a stipulation with Khandekar, and the Stipulation does not reference T&M in any manner, let alone state that KCG will be responsible for T&M costs. Rather, the Stipulation states that the parties will agree upon "a qualified third party forensic IT vendor," which the parties did when they agreed upon Kroll on June 30, 2017.  (ECF No. 39, ¶ 2.) Clearly, Khandekar retained T&M for his own personal defense, unrelated to the parties' agreement.

Similarly, Khandekar also seeks costs for T&M work that took place after Kroll completed its work under the Stipulation. Specifically, on August 10, 2017, Kroll submitted its report relaying its forensic review findings.  Khandekar maintains, however, that KCG must pay $2,137.00 for T&M work between August 11 and October 4, 2017, up to two months *after* Kroll submitted its report (Lipman Decl., Ex. B, p. 4., ECF No. 166-2), without providing any reason why KCG should be responsible for this post-Kroll work.

7

Contemporaneous correspondence by Khandekar's counsel with T&M produced in discovery further belies the contention that the Stipulation plainly dictated that KCG would be responsible for T&M's fees. Indeed, Khandekar's counsel first asked T&M to keep track of its time in July 2017, because it may be "*arguably chargeable* to KCG under the stip." (Kaplan Decl., Ex. 5) (emphasis added). However, had Khandekar's counsel wanted T&M's fees to be *actually chargeable* to KCG, because T&M was retained well in advance of the entry of the Stipulation, KCG's counsel could easily have made such provision in the Stipulation itself. He did not.

Moreover, the vagueness of T&M's time entries during the window when Kroll was completing its work demonstrates the specious nature of Khandekar's request. For instance, Khandekar seeks costs for the following T&M work performed in July 2017:

| Date | Services | Rates | Total |
|------|----------|-------|-------|
| **7/11/2017** | **Date Forensics**: Technical Consulting - Phone call with counsel | $450.00 | $112.50 |
| **7/21/2017** | **Data Forensics:** Technical Consulting - Manual review Intella keyword searching. | $245.00 | $980.00 |
| **7/22/2017** | **Data Forensics**: Technical Consulting - Manual review Intella Keyword Searching. | $245.00 | $980.00 |

(Lipman Decl., Ex. B, p. 4, ECF No. 166-2.)

As the above illustrates, it is simply impossible to determine the nature of or justification for the work reflected in the T&M invoice entries. In any event, better entry descriptions would not alter the result—there is simply no evidence to show that KCG agreed to cover T&M costs.

Further, discovery conducted on T&M invoices confirms the arbitrary and unsound methods by which Khandekar has attributed T&M expenses to KCG. On August 31, 2018, T&M

8

representative Simon Ragona notified Khandekar's counsel that "only a few entries" had been categorized as work purportedly billable to KCG. (Kaplan Decl., Ex. 4.) Ragona asked Khandekar's counsel whether "there are other requests that you . . . are aware of that should be billed to [KCG]." (*Id.*) Khandekar's counsel responded that $5,997.50 in T&M fees should be billed to KCG for "acquisition of Khandekar's images and devices (hardware and online accounts)" and $24,732.50 should be billed to KCG for "analysis of images based on keywords and patterns proposed by KCG." (*Id.*)[1]  As noted above, however, the Stipulation already contemplated that Khandekar had imaged his devices and if he had not imaged his devices, the Stipulation directed Khandekar to "provide[] access to Defendant's Personal Electronic Devices and Electronic Data Storage for the purpose of imaging, collecting, and copying the information contained therein" by Kroll. (ECF No. 39, ¶ 2.)

Finally, KCG counsel had almost no interaction with T&M while Kroll performed its forensic review under the Stipulation. In his motion, Khandekar cites to only one e-mail between KCG counsel and T&M during the relevant time. As the e-mail to T&M documents, however, KCG counsel e-mailed T&M at the express direction of Khandekar's counsel. (Lipman Decl. Ex. D, ECF No. 166-4, p. 2 ("Pursuant to my call with [Khandekar's counsel], he and I discussed the search terms, and I have some questions that Zack requested I direct to you.  He also asked that I make requests and suggestions directly to you . . . .").)  The fact that Khandekar's counsel

---

[1] Khandekar does not request a specific monetary amount in his motion, and the amounts reflected in e-mail communications between and among Khandekar's counsel and T&M do not directly align with the amounts reflected in the invoices. It appears, however, that Khandekar is seeking $31,180 for T&M expenses and $5,386.86 for TR expenses, based on the exhibits submitted in support of Khandekar's motion. Regardless of the specific calculation, the communications between T&M and Khandekar's counsel show that Khandekar seeks reimbursement for categories of work that the parties agreed Kroll would perform under the Stipulation, not T&M or TR.

requested that KCG counsel speak with Khandekar's IT vendor about certain search terms simply does not show that T&M is the IT vendor under the Stipulation.

### C.    Khandekar Cannot Pass His TR Expenses Onto KCG.

Khandekar also demands that KCG pay $5,386.86 in fees charged by TR for use of its e-discovery platform. (Lipman Decl., Ex. E, ECF No. 166-5.) But the Stipulation calls for the third party IT vendor (Kroll), not Khandekar, to review these documents. (ECF No. 39 (noting that the third party IT vendor will "conduct a forensic review of such information . . . and shall search the information . . . .").) The fact that Khandekar retained a vendor to host his e-discovery platform simply has no relation to the Stipulation. Indeed, *all* of the TR charges are for work performed in late September 2017, over one month *after* Kroll issued its report relaying its findings based on the Stipulation. (Lipman Decl., Ex. E, ECF No. 166-5.) Nor do the TR invoices provide any meaningful information about the nature of the charges at issue. The invoices show only the timekeeper who ran search terms or reviewed documents, the date on which the work was performed, and the fact that "special pricing" was excluded from the charges. (*Id.*) These are expenses Khandekar incurred on his own behalf to prepare his own defense. They are not chargeable to KCG.

## III.    ARGUMENT

### A.    KCG Did Not Contract to Pay for Khandekar's Defense Costs.

Khandekar first argues that KCG must pay his T&M and TR expenses because a valid contract covering those expenses purportedly exists. The plain language of the Stipulation dooms his argument. Khandekar:

- Demands $6,322.50 for T&M's device imaging. But the Stipulation merely directs Khandekar to deliver his device images to the designated third party IT vendor, assuming Khandekar had met his preservation obligations. In the event Khandekar had not imaged

all of his devices, *the third party IT vendor* (Kroll), not T&M, was required to conduct additional imaging of the devices.

- Demands $24,857.50 for T&M's forensic review of the device data at issue ($2,137 of which was incurred after Kroll submitted its report relaying its forensic review findings). But the Stipulation required *the third party IT vendor* (Kroll) to review and analyze the data in question. (*See* ECF No. 39 (stating that the designated third party IT vendor will "conduct a forensic review of such information using standard forensic protocols, and shall search the information using mutually agreed upon search terms.").) Further, the Stipulation provided that "Defendant" (not another third party designated by Defendant) would perform a review for privilege and develop a privilege log. (*Id.*)

- Demands $5,386.86 for use of TR as his document review platform, yet, again, the Stipulation provides only that the third party IT vendor (Kroll) will perform reviews of the relevant data.

(*Id.* ¶ 2.)

Equally tenuous is Khandekar's claim that KCG must pay $6,322.50 in T&M imaging expenses when he incurred them over one month *before* the Stipulation was entered, and $7,523.86 ($2,137 from T&M and $5,386.86 from TR) for work and services *after* Kroll submitted its report under the Stipulation. KCG only agreed to pay for Kroll's work, not any work performed by vendors that Khandekar chose to retain for work he wanted performed, whether related to the Stipulation or otherwise.  Simply put, there is no breach of contract claim where there is no contract. *Leon v. New York City Employees' Retirement System*, 240 A.D. 2d 186 (N.Y. App. Div. 1st Dept. 1997) (noting that where "no contract exists . . . . [t]here can be no cause of action for breach of contract").

In sum, KCG did not agree to cover all expenses that could conceivably relate to work under the Stipulation. It agreed to pay for a specific third party IT Vendor (Kroll) to perform the services delineated in the Stipulation, nothing more or less. KCG satisfied its obligation by paying Kroll over $200,000 for its services.  The Court should reject Khandekar's effort to

11

stretch the Stipulation beyond it terms, scope and straightforward purpose, and foist his own costs upon KCG.

> **B.    Assuming, Arguendo, That Khandekar Can Show KCG Agreed to Pay For Certain T&M and/or TR Services, His Motion Must Still Be Denied As The Time Entries Are Indecipherable.**

The evidence shows that the parties agreed that Kroll would be the third party IT vendor under the Stipulation, and that KCG would only be responsible for Kroll's work, not any other vendors that Khandekar chose to retain. Nonetheless, assuming, *arguendo*, that KCG agreed to satisfy certain costs of T&M and/or TR, it is impossible to decipher the actual nature of services T&M and TR provided to Khandekar. For instance, T&M's July 21, 2017 time entry simply states: "**Data Forensics:** Technical Consulting - Manual review Intella keyword searching." (Lipman Decl., Ex. B, p. 3, ECF No. 166-2.)  One has no way to decipher whether Khandekar instructed T&M to run key word searches unrelated to the parties' agreed search terms or if he requested that T&M run search terms that Kroll had already run.  As such, the Court should deny Khandekar's specific cost requests even if he has established that KCG agreed that T&M would be the IT vendor under the Stipulation.

> **C.    Khandekar's "Accounts Stated" Theory is Inapposite.**

Khandekar argues that under an "accounts stated" theory, KCG owes the amounts requested because KCG did not "promptly raise[] objections" to Khandekar's demand for payment of the T&M fees. This theory is neither applicable nor valid. By Khandekar's logic, any party could have his defense costs covered in litigation simply by directing invoices to opposing counsel who does not immediately respond with objections. This is simply not how fees and costs are allocated in litigation. Litigation expenses are initially borne by the party who incurs them, irrespective of whether invoices are submitted to the opposing side. The Stipulation

12

certainly did not amount to an agreement to pay for Khandekar's strategic defense costs, and KCG's silence when it received the invoices does not create a legally binding agreement for payment.

Indeed, an accounts stated theory "cannot be made an instrument to create liability when none otherwise exists[,] but assumes the existence of some indebtedness between the parties or an express agreement to treat the statement in question as an account stated." *Matter of Martin H. Bauman Assoc. v H & M Intl. Transp.*, 171 A.D.2d 479, 485 (N.Y. App. Div. 1st Dept. 1991); *see also Meadowbrook-Richman, Inc. v. Associated Fin. Corp.,* 325 F. Supp. 2d 341, 360 (S.D.N.Y. 2004) (rejecting accounts stated theory where "there was no agreement, express or implied, on the legitimacy of the amounts stated by . . . or indeed on the legitimacy of the claims themselves."). Moreover, an accounts stated theory "must be founded upon previous transactions" between the parties "creating the relationship of debtor and creditor." *Trans-Pro Logistic, Inc. v. Coby Elecs. Corp.*, No. 05 CV 1759 (CLP), 2012 U.S. Dist. LEXIS 19899, at *50 (E.D.N.Y. Feb. 15, 2012). KCG did not have a prior agreement, express or implied, to cover Khandekar's defense costs; rather, it had a prior agreement to cover the costs of the third party IT vendor agreed upon by the parties, namely Kroll, which it did.  Moreover, there are no prior transactions between KCG and Khandekar that give rise to a creditor-debtor relationship. And, when Khandekar first asserted his specious reading of the Stipulation, KCG firmly rejected it. (Lipman Decl., Ex. F, ECF No. 166-6 ("Plaintiffs will not agree to pay the charges associated with Defendant's choice of vendor …."). Accordingly, Khandekar cannot expand the scope of the Stipulation through an antiquated legal theory inapplicable on these facts.

IV.     **CONCLUSION**

      Khandekar cannot create liability where none exists. KCG only agreed to pay for the costs of the third party IT Vendor the parties agreed upon — Kroll.  In turn, KCG paid Kroll over $200,000 for its services as it agreed to do.  KCG is not obligated to pay for vendors that Khandekar chose to retain in this matter to assist with discovery and his defenses.  KCG therefore respectfully asks that the Court deny Khandekar's motion in its entirety.

Dated: New York, New York

    January 24, 2020                BAKER & MCKENZIE LLP

                                   By:  *s/ Jacob M. Kaplan*
                                   William F. Dugan (*pro hac vice*)
                                   Jacob M. Kaplan
                                   Baker & McKenzie LLP
                                   452 Fifth Avenue
                                   New York, NY 10018
                                   Telephone: (212) 626-4100
                                   Fax:  (212) 310-1696
                                   Email:william.dugan@bakermckenzie.com
                                   Email: jacob.kaplan@bakermckenzie.com

                                   *Attorneys for Plaintiffs KCG Americas LLC and KCG Holdings, Inc.*