UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

KCG HOLDINGS, INC., et al.,                                    :
                                                               :
                              Plaintiffs,                      :
                                                               :    REPORT AND RECOMMENDATION
                                                               :
               -v.-                                            :
                                                               :    17 Civ. 3533 (AJN) (GWG)
ROHIT KHANDEKAR,                                               :
                                                               :
                              Defendant.                       :

-----------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

KCG Holdings, Inc. and KCG Americas LLC (collectively, "KCG") brought this lawsuit

against Rohit Khandekar alleging violations of the Defend Trade Secrets Act (the "DTSA"), 18

U.S.C. § 1832, et seq.; the Computer Fraud and Abuse Act (the "CFAA"), 18 U.S.C. § 1030, et

seq.; and New York state law regarding the misappropriation of trade secrets. KCG also brought

a New Jersey state law claim for breach of Khandekar's employment contract. Following cross-

motions for summary judgment, the district judge found in favor of KCG on its DTSA and state

law claims, dismissed KCG's CFAA claim, and dismissed two counterclaims that had been

interposed by Khandekar. The only damages KCG seeks are attorney's fees and costs, a remedy

that is permitted by Khandekar's employment contract with KCG. KCG seeks $3,238,493.53 in

attorney's fees and $336,640.51 in costs for a total of $3,575,134.04.[1] For the reasons stated

---

[1] See Motion for Attorney Fees and Costs and to Enter Judgment, filed June 12, 2020
(Docket # 201); Memorandum of Law in Support of Plaintiffs' Motion to Set Attorney's Fees,
Costs and Expenses and Enter Judgment, filed June 12, 2020 (Docket # 202) ("Pl. Mem.");
Declaration of Jacob M. Kaplan, filed June 12, 2020 (Docket # 203) ("First Kaplan Decl.");
Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion, filed July 13, 2020
(Docket # 207) ("Defense Opp."); Declaration of C. Zachary Rosenberg, filed July 13, 2020
(Docket # 208) ("Rosenberg Decl."); Declaration of Rohit Khandekar, filed July 13, 2020
(Docket # 209) ("Khandekar Decl."); Reply Memorandum of Law in Support of Plaintiffs'

below, KCG should be awarded $344,018.00 in attorney's fees and $57,458.80 in costs, for a total of $401,476.80.

I. PROCEDURAL BACKGROUND

KCG filed this lawsuit against Khandekar on May 11, 2017, alleging breach of his employment contract and misappropriation of trade secrets in violation of the DTSA and state common law.  See Complaint, Docket # 26, Exh. 1.  KCG sought a temporary restraining order, which was denied (see Docket # 26, Exh. 2; Docket # 9 at 8:19-20), and a preliminary injunction (Docket # 24), which the parties resolved by entering into a joint stipulation that was "so ordered" by the Court on July 5, 2017 (Docket # 39).  In the meantime, Khandekar had interposed counterclaims against KCG, seeking $335,292.49 in damages for failure to make certain payments under his employment contract.  (Docket # 17, ¶¶ 115, 120).  KCG then amended its complaint, adding the CFAA claim.  See First Amended Complaint, filed Aug. 28, 2017 (Docket # 80) ("FAC").  After a period of discovery, including numerous applications to resolve discovery disputes (see, e.g., Docket ## 27, 46, 59, 76, 82, 83, 93), the parties cross-moved for summary judgment (Docket # 129, Docket # 144).

In its decision ruling on the motions for summary judgment, the district court found that KCG was entitled to judgment as a matter of law on its DTSA, breach-of-contract, and New York common-law claims, and was entitled to dismissal of Khandekar's counterclaims.  The district court granted Khandekar summary judgment on KCG's CFAA claim.  See Opinion and Order, filed March 12, 2020 (Docket # 175) ("SJ Op.") at 1.  With respect to the breach of contract claim, the opinion concluded that Khandekar's employment agreement with KCG

Motion, filed August 3, 2020 (Docket # 210) ("Pl. Reply"); Declaration of Jacob M. Kaplan, filed August 3, 2020 (Docket # 211) ("Second Kaplan Decl.").

required Khandekar to pay "KCG's attorney's fees, costs, and expenses, including its investigation costs." Id. at 38. As to KCG's request for injunctive relief, it concluded that KCG's request was "overbroad" and instead ordered "narrower" relief in the form of an injunction that prohibits Khandekar from "using or disseminating, in any way, the trade secrets he reviewed without authorization at KCG between November 2016 and May 2017." Id. at 36, 37, 38.

This motion for attorney's fees and costs followed.

## II.  LEGAL STANDARD

Where state law governs a claim, "[s]tate law creates the substantive right to attorney's fees." Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d 47, 53 (2d Cir. 1992) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 52 (1991)). Khandekar's employment agreement states that it "shall be governed by and interpreted in accordance with New Jersey law." FAC, Exh. A, at 9 ("Employment Agreement"). The parties agree that New Jersey law applies. See Pl. Mem. at 2-3; Defense Opp. at 8-10.

While "New Jersey has a strong policy disfavoring shifting of attorneys' fees," N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 569 (1999) (internal citation omitted), New Jersey recognizes that "a party may agree by contract to pay attorneys' fees . . . . " Id. at 570. Nonetheless, New Jersey courts will "strictly construe that provision in light of the general policy disfavoring the award of attorneys' fees." Id. (internal citation omitted).

In Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372 (2009), the New Jersey Supreme Court set forth the standard for determining reasonable attorneys' fees where fee-shifting occurs pursuant to a contract. In Litton, the New Jersey Supreme Court emphasized that it has "applied the same test for reasonable attorneys' fees in contract cases that [it] uses in other attorneys' fee

3

award cases in New Jersey," id. at 386 (citing N. Bergen).  That standard requires that a court

first determine "whether the party seeking the fee prevailed in the litigation."  Id. (internal

citation omitted).  If so, the court must calculate the "lodestar" amount, defined as "that number

of hours reasonably expended by the successful party's counsel in the litigation, multiplied by a

reasonable hourly rate."  Id. (internal citation omitted).  A court can adjust the lodestar by

considering the factors in New Jersey's Rule of Professional Conduct 1.5(a), which include the

following:

> (1) the time and labor required, the novelty and difficulty of the questions
> involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular
> employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the
> services;
> (8) whether the fee is fixed or contingent.

Id. at 387 (quoting RPC 1.5(a)).  The factors listed are non-exhaustive.  See Serrins & Assocs.,

LLC v. Hanover Direct, Inc., 2014 WL 3928523, at *12 (N.J. Super. Ct. App. Div. Aug. 13,

2014).

Notwithstanding the fact that New Jersey law governs this dispute, we occasionally cite

to federal case law to analyze doctrines that appear in both New Jersey and federal law because

the New Jersey Supreme Court itself has often relied upon federal cases in constructing its own

attorney's-fees jurisprudence.  See, e.g., Rendine v. Pantzer, 141 N.J. 292, 335 (1995).

III.  DISCUSSION

As an overarching argument, Khandekar urges that this motion be denied in its entirety,

because "it is 'so outrageously excessive and unreasonable that it could not possibly have been

4

made in good faith.'"  Defense Opp. at 10 (quoting <u>Toussie v. Cty. of Suffolk</u>, 2012 WL 3860760, at *6 (E.D.N.Y. Sept. 6, 2012)).  The central case Khandekar uses to support this argument, <u>Toussie</u>, involved a fee applicant who had made repeated misrepresentations to the court about billing entries and repeatedly disregarded the court's orders in submitting his fee application.  <u>See Toussie</u>, 2012 WL 3860760 at *6-9.  Here, no such circumstances are present, and Khandekar's attack consists merely of the usual elements of an opposition to a fee application: an attack on the reasonableness of the hours sought and of the hourly rates.  Defense Opp. at 11-24.  Thus, there is no warrant in case law or logic for denying the fee application in its entirety.

Khandekar also argues, <u>see</u> Defense Opp. at 14-16, that the motion should be denied because KCG is not a "prevailing party" as required by New Jersey law, <u>see</u>, <u>e.g.</u>, <u>Litton Indus.,</u> <u>Inc. v. IMO Indus., Inc.</u>, 200 N.J. 372, 386 (2009).  This argument is foreclosed by the district court's Opinion and Order granting summary judgment, which directed Khandekar to "pay KCG's attorney's fees, costs, and expenses, including its investigation costs."  SJ Op. at 1, 38. This ruling is the law of-the-case, <u>see</u>, <u>e.g.</u>, <u>Sanders v. Sullivan</u>, 900 F.2d 601, 605 (2d Cir. 1990), and we will not disturb it.

We next turn to the requests for attorney's fees and costs.

A.  <u>Attorney's Fees</u>

    1.  <u>Reasonable Hourly Rate</u>

The New Jersey Supreme Court has held that

a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community. Thus, the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.

5

Rendine v. Pantzer, 141 N.J. 292, 337 (1995) (internal citation omitted); accord Litton, 200 N.J. at 387 (citing Rendine).  Additionally, the New Jersey Supreme Court has held that "[t]he rates to be applied should be those that would be charged by an adequately experienced attorney possessed of average skill and ordinary competence — not those that would be set by the most successful or highly specialized attorney in the context of private practice."  Singer v. State, 95 N.J. 487, 500 (1984) (emphasis added).  In Walker v. Giuffre, 209 N.J. 124 (2012), the New Jersey Supreme Court cited to both Rendine and Singer in describing the appropriate inquiry for determining a reasonable rate:

> Our decision in Rendine also articulated the principles that inform the calculation of a reasonable hourly rate, noting that it "is to be calculated according to the prevailing market rates in the relevant community" and should include an assessment of the "experience and skill of the prevailing party's attorneys and [a] compar[ison] . . . to the rates prevailing in the community for similar services" by comparable lawyers. . . .  We directed trial courts to ensure that the hourly rate awarded is "fair, realistic, and accurate," allowing for adjustments to the requested rate when appropriate. . . . .  In another context, this Court described a reasonable hourly rate as being one "that would be charged by an adequately experienced attorney possessed of average skill and ordinary competence — not those that would be set by the most successful or highly specialized attorney in the context of private practice." Singer v. State, 95 N.J. 487, 500-01[.]

Id. at 132-33 (internal citation omitted).

KCG suggests that Singer's emphasis on determining reasonableness by reference to an attorney "possessed of average skill" is not relevant in this case because it was "articulated in the context of awarding fees pursuant to a . . . statute."  Pl. Reply at 9.  But as the New Jersey Supreme Court made clear in Litton, "[w]e have applied the same test for reasonable attorneys' fees in contract cases that we use in other attorneys' fee award cases in New Jersey."  200 N.J. at 386.  Thus, in determining the reasonable rate to be awarded here, we must adhere to both limitations on rates sought.  That is, we must award the rates prevailing in the community for similar services performed by the attorneys requesting them.  But at the same time we must not

6

award rates based on the rates charged by the most expensive or experienced lawyers in the community — or, to use <u>Singer</u>'s language, the rates of "the most successful or highly specialized attorney in the context of private practice," 95 N.J. at 500 — but rather on the rates charged by attorneys of "average" skill, experience and reputation.  <u>Id.</u>

Certainly, in its choice of attorneys, a party may understandably choose to undertake the equivalent of flying first class.  But when it comes time to shift "reasonable" fees to another party under New Jersey law, it may only collect the equivalent of an economy class ticket.

a. <u>The Relevant "Community"</u>

The "burden of providing evidence as to the reasonableness of the hourly rates charged and the time expended must be borne by" the party seeking fees.  <u>Hebela v. Healthcare Ins. Co.</u>, 370 N.J. Super. 260, 280 (App. Div. 2004).  Khandekar argues that the "community" in this inquiry is not the Southern District of New York, but New Jersey, because the Employment Agreement "includes an exclusive venue provision in New Jersey," and so "[t]he rates Mr. Khandekar agreed to pay in that agreement are those charged by competent attorneys in New Jersey[.]"  Defense Opp. at 12-13.  Khandekar cites no New Jersey case — or indeed, any case — that has held that a contract's venue provision determines the "relevant community" in a fee application inquiry.  <u>Id.</u>  And on this point, New Jersey law follows federal law in finding that the "relevant community" is the district in which the matter is litigated and thus the "forum rate" applies.  <u>See</u> <u>Estate of Cohen ex rel. Perelman</u>, 2013 WL 5476569, at *20 (N.J. Super. Ct. App. Div. Oct. 3, 2013) (affirming imposition of forum rate on New York attorneys who litigated case in New Jersey).  The mere presence of a forum selection clause in a contract — which Khandekar apparently waived by not seeking a transfer of venue based on that clause — is not enough to set aside this long-standing rule for determining a reasonable rate.

7

b. <u>Rates for Attorneys</u>

KCG seeks fees for fifty-eight legal professionals — consisting of 22 associates, 13 partners, seven contract attorneys, six "e-discovery team" members, seven paralegals, two "counsel," and a summer associate. <u>See</u> <u>generally</u> First Kaplan Decl., Exh. 3 (Seyfarth Shaw billing), Second Kaplan Decl., Exh. 4 (consolidating Baker & McKenzie time entries). Four individuals came from Seyfarth Shaw LLP, "a highly-regarded law firm with more than 900 attorneys." First Kaplan Decl. ¶¶ 5-6. When William Dugan, a partner at Seyfarth Shaw, left to join Baker & McKenzie, "another reputable law firm," he brought KCG's case with him. <u>Id.</u> ¶¶ 8-9. The remaining personnel are drawn from across Baker & McKenzie's many offices, including New York, Miami, Palo Alto, Washington D.C., and San Francisco, along with contract attorneys in Belfast, Northern Ireland. First Kaplan Decl. ¶ 11; <u>see</u> <u>also</u> <u>id.</u>, Exh. 5 (B&M CVs), Second Kaplan Decl., Exh. 10 (same). The rates sought for partners range from $552.50 to $1065. <u>See</u> Second Kaplan Decl., Exh. 4. The rates for associates (and other non-partner lawyers) range from $125 to $910. <u>Id.</u>

Khandekar argues that the Court should not "apply Baker McKenzie's astronomical rates, which rival those of the most expensive New York City firms." Defense Opp. at 12. For its part, KCG does not even attempt to argue that the rates reflect those merely of "an adequately experienced attorney possessed of average skill and ordinary competence." <u>Singer v. State</u>, 95 N.J. 487, 500 (1984). Instead, it argues that the rates compare favorably with those of the largest and most expensive firms in New York and points to scattered cases that have awarded such rates. Pl. Mem. at 6-7.

To set the rate of a litigator of "average" skill and ordinary competence, Khandekar suggests that the Court use a document proffered by KCG that gives a listing of rates at a number

8

of New York law firms.  First Kaplan Decl., Exh. 9; Defense Opp. at 12.  Khandekar notes that if

one averages "the rates charged by all firms in Exhibit 9 to KCG's motion, the average partner

and associate rates are $595 and $427 per hour."  Defense Opp. at 12.

As noted above, the New Jersey Supreme Court in <u>Singer</u> instructed lower courts to

determine a reasonable rate by reference to an "attorney possessed of average skill and ordinary

competence."  95 N.J. at 500.  As we have noted, we view this admonition as requiring that we

not award rates charged by the attorneys at the most expensive range in the legal marketplace, as

are sought by KCG here.  Turning to cases that have awarded attorney's fees in the Southern

District of New York in commercial cases, we note that courts have awarded a wide range of

rates.  As one case notes, "[c]ourts in this District have determined that hourly rates ranging from

$250 to $1,260 per hour, for attorneys' work on a commercial litigation matter were reasonable"

depending on complexity, experience, and skill required.  <u>Tessemae's LLC v. Atlantis Capital</u>

<u>LLC</u>, 2019 WL 2635956, at *4 (S.D.N.Y. June 27, 2019) (collecting cases).  We note that a

number of cases have commonly found partner rates in the range of $350 to $650 per hour to be

reasonable in breach of contract suits.  <u>See</u> <u>Hitachi Data Sys. Credit Corp. v. Precision</u>

<u>Discovery, Inc.</u>, 2020 WL 5731953, at *2 (S.D.N.Y. Sept. 24, 2020) ($335 to $525 for three

partners in breach of contract suit); <u>Abraham v. Leigh</u>, 2020 WL 5512718, at *10 (S.D.N.Y.

Sept. 14, 2020) (approving rate of $435 for junior partner in "complex commercial dispute[]''),

<u>reconsideration denied,</u> 2020 WL 5836511 (S.D.N.Y. Oct. 1, 2020); <u>Precise Leads, Inc. v. Nat'l</u>

<u>Brokers of Am., Inc.</u>, 2020 WL 736918, at *7 (S.D.N.Y. Jan. 21, 2020) (awarding partner rate of

$512.50 in breach of contract action and noting that "other courts in this district awarding

attorneys' fees in straightforward breach of contract actions have found partner rates in the range

of $375 to $650 to be reasonable"); <u>Euro Pacific Capital, Inc. v. Bohai Pharmaceuticals Group,</u>

9

Inc., 2018 WL 1229842, at *8 (S.D.N.Y. Mar. 9, 2018) ($375 for partner), report and

recommendation adopted, 2018 WL 1596192 (S.D.N.Y. Mar. 28, 2018); Carlton Group, Ltd. v.

Par-La-Ville Hotels & Residences Ltd., 2016 WL 3659922, at *3 (S.D.N.Y. June 30, 2016)

($450 for experienced partners and senior attorneys); 615 Bldg. Co., LLC v. Rudnick, 2015 WL

4605655, at *3 (S.D.N.Y. July 31, 2015) ($316 to $475 for partners characterized as the "mid-

range" of acceptable billing rates in this district); Mazzei v. Money Store, 2015 WL 2129675, at

*3 (S.D.N.Y. May 6, 2015) ($450 for attorneys with fifteen to twenty years of experience in

complex litigation); Rhodes v. Davis, 2015 WL 1413413, at *3 (S.D.N.Y. Mar. 23, 2015) (in

breach of contract action, awarding rates of "$450 per hour (for a founding partner with

approximately forty years of practice)"), aff'd, 628 F. App'x 787 (2d Cir. 2015).  While we do

not believe this case was unusually complex, it was not a simple breach of contract suit and thus

we find that awarding a partner rate of the number proposed by Khandekar — $595 per hour —

 generously accounts for the complexity of this action.  See Precise Leads, Inc., 2020 WL

736918, at *7.  We will award less than the $595 rate where the partner specifically billed at a

lesser rate.

        Courts have awarded associate rates at a level far lower than the rate for partners.  See,

e.g., Winklevoss Capital Fund, LLC v. Shrem, 360 F. Supp. 3d 251, 257 (S.D.N.Y. 2019) ($265

for junior associate); Hitachi Data Sys. Credit Corp., 2020 WL 5731953, at *2 ($160 for

associates in breach of contract suit); Rhodes, 2015 WL 1413413, at *3 ($300 "for an associate

with approximately ten years of practice").  Once again, given the complexity of the case, and

the fact that Khandekar has not proposed a lesser rate for New York attorneys, we will accept his

suggestion to award non-partners a rate of $427 per hour, except that we award a lower rate

where a non-partner seeks a lower rate.

Given the large number of attorneys assigned to this matter, we will not differentiate amounts awarded to partners or non-partners based on their years of experience.  Instead, we will award a single rate of $595 per partner and $427 per non-partner for all such attorneys for whom fees are awarded, except where a lesser rate was billed.[2]

### c.  Paralegal and "E-Discovery Team" Rates

KCG's billing records reflect that paralegals were billed out at rates ranging from $175 an hour to $390, and that the in-house "e-discovery team" members, who are not attorneys judging from the CVs provided, were billed out at rates ranging from $240 to $500.  See Second Kaplan Decl., Exh. 4 at 2.

As for the paralegals, because this court has not been provided with any evidence justifying a significantly higher rate for their work in this case, an across the board reduction is warranted to $75 per hour for all paralegal work, a standard paralegal rate in this district.  See O.R. v. New York City Dept. of Educ., 340 F. Supp. 3d 357, 368 (S.D.N.Y. 2018); accord Lujuan v. JPG LLC, 2018 WL 3353060, at *2 (S.D.N.Y. June 6, 2018) ("courts in this Circuit have generally found $75 to be reasonable" for a paralegal) (internal citation omitted).

In light of the e-discovery team's apparent expertise, the Court finds that a higher rate for their services is warranted and will award $200 an hour to compensate for that experience.  See Banus v. Citigroup Glob. Markets, Inc., 2011 WL 13327174, at *6 (S.D.N.Y. Sept. 13, 2011) ("In the New York City market, it may now be reasonable to charge rates in the $200-per-hour range for the work of paralegals . . . at least where paralegals have specialized expertise.") (internal citation omitted), report and recommendation adopted, 2011 WL 13327173 (S.D.N.Y.

---

[2]  As explained below in Section III.A.2.g, the Court does not award any hours for the work done by contract attorneys in this case.

11

Oct. 4, 2011).

      2.  <u>Reasonable Number of Hours</u>

      KCG must also establish that the number of hours for which it seeks compensation is reasonable.  <u>Litton Indus., Inc. v. IMO Indus., Inc.</u>, 200 N.J. 372, 386 (2009).  In evaluating the claimed hours, a court "should exclude hours that are not reasonably expended," such as those that "are excessive, redundant, or otherwise unnecessary."  <u>Rendine v. Pantzer</u>, 141 N.J. 292, 335 (1995) (quoting <u>Rode v. Dellarciprete</u>, 892 F.2d 1177, 1183 (3d Cir. 1990)) (additional internal citation and quotation omitted).  The court can further "reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed."  <u>Id.</u> (citing <u>Rode</u>).  The New Jersey Supreme Court has further emphasized that

> [T]he focus must be on "the amount of time reasonably expended" rather than merely an acceptance of "the amount of time actually expended." . . .  Moreover, we required the attorney seeking the fee award to prepare and provide a request in the form of a certification of services that is sufficiently detailed to enable the court to accurately calculate the lodestar.  <u>Rendine, supra</u>, 141 N.J. at 337 . . .  In that regard, although we did not require exactitude, we embraced the concept that "fairly definite information as to the hours devoted to various general activities . . . and the hours spent by various classes of attorneys" was essential for the court to analyze the fee request and to perform the lodestar calculation.

<u>Walker v. Giuffre</u>, 209 N.J. 124, 131 (2012) (internal citation omitted).

      In support of their application for attorneys' fees, KCG's attorneys submitted copies of their invoices, which compile the timesheets of all personnel who worked on this matter.  <u>See</u> First Kaplan Decl., Exh. 3, Exh. 6; Second Kaplan Decl., Exh. 1.  The invoices show the date on which services were performed, the hours expended, and a description of the work done, and exceed over four hundred pages of documentation.  <u>Id.</u>  In total, KCG's legal team represents that it expended 5,780.3 hours on this case.  Second Kaplan Decl., Exh. 3.

Khandekar asserts these hours are excessive, pointing to the vast difference between the

time spent by his attorneys on the case (846.8 hours) versus KCG's (5,336.6 hours).  See

Defense Opp. at 11.[3]  He further argues that the practice of "block billing" warrants a reduction

in time, because "it is impossible to determine how many hours KCG incurred on any specific

task."  Id. at 18, n. 15.  Khandekar additionally challenges specific subsets of the claimed hours

as unreasonable, including:

1) hours billed for a temporary restraining order application that KCG lost.  Khandekar

Decl. ¶¶ 34-35.

2) hours billed in connection with an investigation by the Financial Industry Regulatory

Authority, Inc. ("FINRA") of Khandekar that was closed "without pursuing charges."  Id.

¶¶ 36-38.

3) hours billed on a production dispute over KCG's files that KCG was eventually

ordered to produce.  Id. ¶¶ 39-42.

4) hours billed for the amended complaint, which added the CFAA claim dismissed at

summary judgment.  Id. ¶¶ 43-44.

5) hours billed over a dispute regarding the order of depositions that KCG lost.  Id. ¶¶ 45-

46.

6) hours billed for a spoliation motion and a potential motion seeking the deposition of

Khandekar's wife that were never filed.  Id. ¶¶ 51-54.

7) hours billed for KCG's essentially unsuccessful motion to seal its billing records for

this application.  Id. ¶¶ 55-58.

---

[3]  Khandekar's calculation does not include the additional hours submitted by KCG's
attorneys in their reply, or the hours billed by KCG's attorneys at Seyfarth Shaw.  See Second
Kaplan Decl., Exh. 1, 3.

8) hours billed for work on the arbitration proceeding in this case.  Id. ¶¶ 59-61.

9) hours billed for litigating the Stipulation between the parties.  Defense Opp. at 20.

10) hours billed for lawsuits against two different employees of KCG.  Khandekar Decl. ¶¶ 62-64.

As we explain further below, we agree that the total of 5,780.3 hours spent on this case is excessive and that an across-the-board percentage reduction in hours is appropriate. Nonetheless, we address the specific matters raised by Khandekar as some of them will result in a reduction of the overall hours claimed and others will inform the percentage reduction that we will apply.

a.  Block Billing and/or Vague Entries

While courts applying New York law and Second Circuit precedent have repeatedly found "block billing" to be improper, see, e.g., Vista Outdoor, Inc. v. Reeves Family Tr., 2018 WL 3104631, at *7-8 (S.D.N.Y. May 24, 2018), New Jersey courts have sometimes approved the use of block billing in fee applications.  See, e.g., N.M. v. A.S., 2018 WL 1321106, at *5 (N.J. Super. Ct. App. Div. Mar. 15, 2018) ("While a substantial number of vague entries may be a reason to exclude hours, it is not a reason to exclude the entire entry."); Briel v. Bd. of Educ. of Borough of Madison, 2012 WL 443999, at *2 n.4 (N.J. Super. Ct. App. Div. Feb. 14, 2012) ("[A]pplying an across-the-board reduction [because of block billing] would have run counter to Rendine . . . .  To adopt a blanket rule because of some lack of specificity in the timekeepers' entries would be just as inappropriate as accepting passively the fee application on its face.").  In any event, we have examined the entries and find them to be only minimally problematic.  Thus, we will not make a reduction based on the block-billing argument.

b. <u>Unsuccessful Motions</u>

Khandekar argues that KCG's fees should be reduced "because of its severely limited success." Defense Opp. at 16. He notes that, under New Jersey law, "the court has discretion to exclude the number of hours spent litigating unsuccessful claims[.]" <u>Empower Our Neighborhoods v. Guadagno</u>, 453 N.J. Super. 565, 587 (App. Div. 2018) (internal citations omitted).

The flaw in Khandekar's argument, however, is that he seeks to deny reimbursement not merely for unsuccessful <u>claims</u> but rather for a number of unsuccessful <u>motions</u>, such as discovery motions and the motion for a temporary restraining order. <u>See</u> Defense Opp. at 18.[4] But the rule is that a litigant may be denied reimbursement for fees attributable to unsuccessful "claim[s]" — not motions — and even in that situation, a court need not deny reimbursement "if the same evidence adduced to support a successful claim was also offered on an unsuccessful claim." <u>Litton Indus., Inc. v. IMO Indus., Inc.</u>, 200 N.J. 372, 387 (2009); <u>accord</u> <u>Guadagno</u>, 453 N.J. Super. at 587 (same). Thus, while courts can exercise their discretion to strike billing entries on unsuccessful claims "that are based on different facts and legal theories" from those underlying successful claims, where claims "involve a common core of facts" so that a court cannot disentangle the successful claims from the unsuccessful ones, striking entries that relate to the unsuccessful claim is inappropriate. <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434-35 (1983); <u>accord</u> <u>Boles v. Wal-Mart Stores, Inc.</u>, 2015 WL 4653233, at *10 (D.N.J. Aug. 5, 2015) (declining to separate out hours spent on unsuccessful claims), <u>aff'd</u>, 650 F. App'x 125 (3d Cir. 2016).

---

[4] We include in this category motions that were drafted and never filed: most notably, the hours billed for a spoliation motion and the potential deposition of Khandekar's wife. <u>See</u> Khandekar Decl. ¶¶ 51-54.

The hours spent on unsuccessful <u>motions</u>, if reasonable and necessary at the time they were made, are compensable.  <u>See</u>, <u>e.g.</u>, <u>Blakey v. Cont'l Airlines</u>, 2 F. Supp. 2d 598, 607 (D.N.J. 1998) ("Hours may be reasonably expended on a reasonable strategy that simply does not succeed.") (internal citation omitted).

Here, KCG brought four claims against Khandekar: violating the DTSA, breach-of-contract, misappropriation of trade secrets, and violating the CFAA.  <u>See</u> FAC 14-25.  It succeeded on all the claims except for the CFAA claim.  All the claims, including the CFAA claim, related to the same core facts: Khandekar's conduct in improperly accessing files at KCG. <u>See</u> SJ Op. at 32.  Thus, we will not attempt to separate hours that might be attributable to the unsuccessful CFAA claim.  <u>See</u> <u>Litton</u>, 200 N.J. at 388 (upholding award of fees on unsuccessful contract claim that shared "common core of facts that require the production of essentially the same evidence"); <u>Boles</u>, 2015 WL 4653233, at *10 (awarding fees for unsuccessful claims "intertwined with Plaintiff's successful retaliation claim").

As to the unsuccessful motions, the Court could exclude hours attributable to such motions if Khandekar had shown that the hours attributable to them were not "reasonably expended" or were "unnecessary."  <u>Rendine v. Pantzer</u>, 141 N.J. 292, 335 (1995) (quoting <u>Rode v. Dellarciprete</u>, 892 F.2d 1177, 1183 (3d Cir. 1990).  It is not enough, however, to simply show that KCG lost the motions.  Thus, fees should not be disallowed for those motions.

c.  <u>Arbitration</u>

Khandekar seeks to exclude all billing entries related to an arbitration proceeding that took place while this case was pending, amounting to 273 hours.  <u>See</u> Second Kaplan Decl., Exh. 3 at 13, 19.  The arbitration was initiated by Khandekar pursuant to an agreement separate from the Employment Agreement that contains the fee-shifting provision that gives rise to this motion.

16

See Opinion and Order of Arbitrator, dated Feb. 12, 2018, at 1 (reproduced at Rosenberg Decl., Exh. B). The parties have done little to explain the nature of the agreement that was the basis of the arbitration but the arbitration decision itself seems to identify the arbitration as arising from the "KCG Holdings, Inc. Amended and Restated Equity Incentive Plan." Id. In the arbitration, Khandekar sought certain payments that he believed he was due under the Plan and KCG interposed a counterclaim. Id. at 4. The arbitration decision rejected Khandekar's claim, and KCG's counterclaim, and did not award any attorney fees to any party. Id. at 16.

While it is not clear if KCG ever sought attorney's fees from the arbitrator, KCG concedes that the rules of the arbitration did not permit an award of attorney's fees unless "all parties agree or law or the arbitration agreement so provide." Pl. Reply at 15 (citing Rule 47(d)(ii) of the Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association, dated July 1, 2016) (reproduced at Second Kaplan Decl., Exh. 9). KCG thus concedes that the KCG Holdings, Inc. Amended and Restated Equity Incentive Plan itself did not allow the shifting of attorney's fees. But if such is the case, KCG does not explain why the Employment Agreement would allow the award of such fees. The Employment Agreement allows the shifting to Khandekar only of fees that KCG incurs "as a result of or arising from" Khandekar's "breach or default" of his "covenants, duties or obligations as set forth in" the Employment Agreement. Employment Agreement at § 13(d). KCG's need to defend Khandekar's efforts to obtain money due to him under the Plan — while unsuccessful and presumably unmeritorious — has not been shown to arise from a "breach or default" of the Employment Agreement. Thus, the 273 hours relating to the arbitration are not compensable and will be deducted.

17

d.  FINRA Investigation

Khandekar also challenges the 74.5 hours spent on a FINRA investigation that he alleges
KCG "instigated" against him.  Khandekar Decl. ¶ 36.  Khandekar argues that these hours should
be excluded both because "FINRA decided not to pursue any action," and thus it was a task "that
provided no value," and because the fees billed "were not incurred in connection with this
litigation."  Defense Opp. at 18.  While we reject the notion that fees would have to be excluded
simply because FINRA decided not to pursue a case against Khandekar, we do need to determine
if the fees were incurred as a result of Khandekar's breach of his duties in the Employment
Agreement.  However, the answer to this question is not readily determinable from KCG's
submissions and KCG did not respond to the arguments as to FINRA in its reply brief.  Thus,
KCG has not met it burden of showing its entitlement to these hours and the 74.5 hours expended
in connection with the FINRA investigation, see Khandekar Decl., Exh. M, at 2, will be excluded
from the lodestar calculation.

e.  Stipulation

Khandekar seeks to exclude fees incurred "litigating the meaning of the Stipulation" in
this case.  Defense Opp. at 20.  The Stipulation (Docket # 39) settled KCG's motion for a
preliminary injunction (Docket # 24) and included a provision that required KCG to bear certain
costs relating to forensic work done by KCG on images taken of Khandekar's electronic devices.
(Docket # 39, ¶ 2).  There was a dispute much later over what costs had to be borne by each
party under the Stipulation.  See Motion to Enforce, filed Dec. 20, 2019 (Docket # 165).
Khandekar argues that the dispute was "governed entirely by the Stipulation, not the employment
agreement upon which KCG's breach of contract claims was based and pursuant to which KCG
was awarded attorney's fees," and thus this dispute is "entirely distinct from KCG's breach-of-

18

contract claim[.]"  Defense Opp. at 20.

We reject this argument.  The Stipulation was entered into as a means of resolving a dispute that arose from the litigation of KCG's claim that Khandekar breached the Employment Agreement.  Thus, the hours fit squarely within the attorney's fees provision of the Employment Agreement. To put it another way, and as pointed out by KCG, Pl. Reply at 12, there would have been no Stipulation and resulting litigation around its meaning without Khandekar's breach of contract.  Accordingly, the hours incurred litigating that issue are properly included in the lodestar.

f.  Zhenquan Zhang and Min Li

Khandekar also seeks to strike from the lodestar any entries related to "separate lawsuits against two other former employees, Zhenquan Zhang and Min Li."  Defense Opp. at 20.  KCG notes that some entries relating to this lawsuit include the names of the two other employees but admits that some of the entries did not relate to Khandekar's lawsuit and thus were improperly included.  See Pl. Reply at 14-15.  KCG submitted an updated fee summary excluding the unrelated entries.  See Second Kaplan Decl., Exh. 3.  We have accepted KCG's revised submission on this point.

g.  Overall Reasonableness of the Hours Claimed

With the above reductions, KCG seeks reimbursement for 5432.8 hours.  New Jersey law requires the court to "evaluate carefully and critically the aggregate hours" claimed.  Rendine v. Pantzer, 141 N.J. 292, 335 (1995).  "[T]he focus must be on 'the amount of time reasonably expended rather than merely an acceptance of the amount of time actually expended.'"  Walker v. Giuffre, 209 N.J. 124, 131 (2012) (quoting Rendine).

Walker notes that the New Jersey Supreme Court has

19

cautioned our trial courts that "[f]ee-shifting cases are not an invitation to prolix or repetitious legal maneuvering. Courts should consider the extent to which a defendant's discovery posture, or a plaintiff's, has caused any excess expenses to be incurred." <u>Szczepanski</u>, <u>supra</u>, 141 N.J. at 366, 661 A.2d 1232. Therefore, a reduction may be appropriate if "the hours expended, taking into account the damages prospectively recoverable, the interests to be vindicated, and the underlying statutory objectives, exceed those that competent counsel reasonably would have expended." <u>Rendine</u>, <u>supra</u>, 141 N.J. at 336, 661 A.2d 1202.

209 N.J. at 132.

KCG is correct in arguing that Khandekar's choice to resist the preliminary injunction along with a number of his other litigation choices worked to increase the hours KCG's counsel had to devote to this case.  Pl. Mem. at 10-12.  KCG is also correct that this case involved some "novel issues of fact and law," Pl. Mem. at 13, though not to a degree that would justify a vast expansion in the number of hours otherwise reasonably necessary to litigate the case.  <u>See</u> <u>Litton Indus., Inc. v. IMO Indus., Inc.</u>, 200 N.J. 372, 387 (2009) (courts should consider "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly" in determining the reasonableness of the lodestar) (quoting RPC 1.5(a)).  But even taking these points into account, and including the reductions accepted above, the Court finds that the number of hours claimed by KCG (5432.8) is vastly excessive.  Some of the excess is surely attributable to the number of attorneys on this case, totaling 37 — a number that does not even include the seven contract attorneys.  As to some specific tasks, 11 attorneys billed for hours relating to depositions for a total of 584 hours.  Second Kaplan Decl., Exh. 3 at 10.  KCG spent 806 hours just on summary judgment briefing alone, involving nine attorneys.  <u>Id.</u> at 17.  KCG used six attorneys and incurred over 100 hours in connection with researching, drafting, and filing its amended complaint.  <u>Id.</u> at 12.  The amended complaint did little more than add a claim for breach of the CFAA, which the Court dismissed on summary

judgment.  Seven attorneys were also involved in the "Coordination of Plaintiffs' Expert" for a total of 152 hours.  Id. at 13.  Eight were involved in "discovery disputes regarding production" for a total of 166 hours.  Id. at 14.  Document review of defendant's 11,500 documents, along with 600 documents from KCG itself and 380 documents from two nonparties, involved 33 different legal professionals billing more than 1200 hours.  Id. at 8-9; Rosenberg Decl. ¶¶ 40-41.

The number of attorneys on this case is "excessive on its face" in light of the nature of the case.  Vista Outdoor, Inc. v. Reeves Family Tr., 2018 WL 3104631, at *9 (S.D.N.Y. May 24, 2018) (fees sought for 13 attorneys).  The abundant supply of attorneys employed by KCG undoubtedly caused inefficiency and contributed to the vast number of hours expended.  Courts routinely reduce lodestar figures due to overstaffing, see, e.g., id. at *13 (reducing hours billed by 35% due to overstaffing); Microsoft Corp. v. United Computer Res. of New Jersey, Inc., 216 F. Supp. 2d 383, 385 (D.N.J. 2002) (reducing requested fees by 44% due to "duplication of effort, and the overstaffing of its 'legal team'").  This case stands alone, however, because it is exceedingly rare, if not unprecedented, to see an application for fees in a single-plaintiff/single-defendant case with the number of attorneys involved here.  The Third Circuit has noted that it has "often disallowed compensation for more than one lawyer performing either trial or office work."  Planned Parenthood of Cent. New Jersey v. Attorney Gen. of State of New Jersey, 297 F.3d 253, 272 (3d Cir. 2002).  Here, there was not merely "more than one" lawyer but rather an astonishing 37 attorneys who performed legal work on this case, plus an additional 7 contract attorneys.

As an initial method of dealing with this inefficiency, we disallow fees for any attorneys who worked less than one-hundredth (1%) of the total hours sought on this case — that is, less than 57 hours.  That excision removes 25 attorneys but still leaves 12 attorneys, two e-discovery

team members, and one paralegal.  Subtracting the non-compensable arbitration and FINRA

hours from the time billed to those tasks by these professionals, that still leaves a request for

4968.4 hours in total — an enormously excessive number given the nature of this case.

 We will make a separate and significant reduction of hours to account for the overstaffing

and obvious inefficiency represented by 12 attorneys working on a case with circumscribed

issues and a single defendant.  But first we address a separate point raised by the defendant to

attack the total number of hours: KCG's alleged lack of success.  Defense Opp. at 14-17.  The

New Jersey Supreme Court has held that "a trial court should reduce the lodestar fee if the level

of success achieved in the litigation is limited as compared to the relief sought."  Rendine, 141

N.J. at 336.  New Jersey courts have emphasized that "[i]n pinpointing the degree of success, the

court should focus on the 'overall relief obtained,' and if 'the plaintiff achieve[d] a level of

success that makes the hours reasonably expended a satisfactory basis for making a fee award.'"

Empower Our Neighborhoods v. Guadagno, 453 N.J. Super. 565, 587 (App. Div. 2018) (citing

Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  If a court determines that only partial success

has been obtained, "the court has discretion to exclude the number of hours spent litigating

unsuccessful claims, to reduce the entire award, to account for limited success, or to combine

both methods."  Id. (internal citation omitted).

 Here, KCG sought a broad injunction against Khandekar that would "prohibit Khandekar

from working on Predictors in any capacity, in perpetuity," but the district judge explicitly

rejected this relief as overbroad.  SJ Op. at 36.  The resulting injunction awarded KCG was

substantially narrower than the one sought by KCG.  Id.  More critically, it was substantially

narrower than the initial injunction that Khandekar had consented to on June 29, 2017, at the

outset of the litigation — an injunction that contained no time limit.  Compare Stipulation

22

(Docket # 39) at 1, with SJ Op. at 38.  As a result, years of litigation and thousands of hours spent by KCG on this matter obtained effectively worse relief than KCG had in hand only a month and a half into this dispute.  Furthermore, the only claim that KCG added in its FAC — the CFAA claim — was completely unsuccessful in that it did not survive summary judgment. SJ Op. at 32.

If this were the full picture of the case, the Court would agree with Khandekar that the fees expended after the June 29, 2017 stipulation — which comprise approximately 93% of the total fees sought — were expended unnecessarily.  But that is not the whole story, because before the Stipulation was entered into resolving KCG's request for injunctive relief, Khandekar filed counterclaims seeking over $335,000 in damages.  See Answer, ¶¶ 115, 120 (Docket # 17). KCG had to defend against those counterclaims and the defense of the counterclaims required proving Khandekar's breach of the employment agreement.  See Memorandum of Law in Support of Motion for Summary Judgment and a Permanent Injunction at 15, 18-19 (Docket # 115).  KCG was completely successful in defending against the counterclaims.

Thus, KCG was successful in fending off the counterclaims but completely unsuccessful in obtaining an expansive injunction, the main focus of its suit.  As a result, the relief KCG ultimately obtained was "limited as compared to the relief sought," Rendine, 141 N.J. at 336. Because KCG achieved no success on its request for an injunction beyond what it achieved early on through the Stipulation, the number of hours it seeks should be significantly reduced.

\*       \*       \*

As a result of the above considerations, including the vast number of hours spent that were disproportionate to the needs of the case, the Court's own familiarity with the work that should have been required to litigate this matter reasonably, and KCG's limited success on its

23

central claim, the hours sought should be reduced by 70%, or from 4968.4 hours to 1490.7 hours.

### 3. Lodestar

To calculate the lodestar, we calculate the reduced hours for each professional (that is, reduced by the hours attributable to each attorney's work on the arbitration and the FINRA investigation and then further reduced by 70%). We then multiply those hours for each attorney by the appropriate hourly rate.

| Name | Title | Rate | Hours | Amount |
|------|-------|------|-------|--------|
| Cassin, Shaun | Associate | $427 | 22.8 | $9,735.60 |
| de la Guardia, Isabella | Associate | $380 | 20.8 | $7,904 |
| Devaney, William | Partner | $595 | 76.9 | $45,755.50 |
| Duffy, Robert | Associate | $427 | 38 | $16,226 |
| Dugan, William | Partner | $595 | 242.8 | $144,466 |
| Flint, Ben | E-Discovery | $200 | 20.4 | $4,080 |
| Fridman, Kristina | Associate | $400/$427 | 2.5/67.9 | $29,993.30 |
| Hatchett, Juliet | Associate | $427 | 202.4 | $86,424.80 |
| Kaplan, Jacob | Partner | $595 | 200.3 | $119,178.50 |
| Kaufman, Meredith | Partner | $552.5/$595 | 42.2/87.5 | $75,378 |
| LaFountain, Petra | E-Discovery | $200 | 65.7 | $13,140 |
| Lewis, Robert | Partner | $595 | 39 | $23,205 |
| Logan, Melissa | Associate | $395 | 27.3 | $10,783 |
| Muir, Catherine | Associate/Counsel | $427 | 217.9 | $93,043.30 |
| Zagorin, Anne | Paralegal | $75 | 116.3 | $8,722.50 |

As expressed in the table above, this results in a total lodestar amount of $688,036.00.

Khandekar urges that we further reduce the lodestar amount in light of "the immense gap in financial strength between the parties." Defense Opp. at 24. Khandekar has financial resources amounting to approximately $500,000 in assets outside retirement accounts. Khandekar Decl. ¶¶ 83-85. He contrasts this with the immense wealth of KCG, now Virtu Financial, a $10 billion company. Khandekar Decl. ¶ 80. Khandekar argues that imposing the fee requested by KCG would subject him to "utter financial ruin." Defense Opp. at 25.

The factors relevant to adjusting the lodestar listed in Litton are non-exhaustive. See Serrins & Assocs., LLC v. Hanover Direct, Inc., 2014 WL 3928523, at *12 (N.J. Super. Ct. App. Div. Aug. 13, 2014). And at least one court in New Jersey has explicitly found that consideration of the financial means of a proposed payor is appropriate in attorney fee shifting cases. See Michael v. Robert Wood Johnson Univ. Hosp., 398 N.J. Super. 159, 167 (App. Div. 2008) ("In our judgment, the ability of a party to pay an award of counsel fees is inherent in the concept of analyzing what is a reasonable fee."). Moreover, the New Jersey Supreme Court has consistently emphasized its "general policy disfavoring the award of attorney's fees," and the need to "strictly construe[]" contractual provisions awarding fees. Litton, 200 N.J. at 385 (internal citation omitted). Federal law, which as previously noted is relied on by New Jersey courts, also has noted that "fee awards are at bottom an equitable matter," and so "courts should not hesitate to take the relative wealth of the parties into account." Faraci v. Hickey-Freeman Co., 607 F.2d 1025, 1028 (2d Cir. 1979) (internal citation omitted); accord Martorana v. Bd. of Trustees of Steamfitters Local Union 420 Health, Welfare & Pension Fund, 404 F.3d 797, 804 (3d Cir. 2005) (noting that, in ERISA fee award context, courts should consider "the ability of

25

the offending parties to satisfy an award of attorney's fees"); Toliver v. Cty. of Sullivan, 957 F.2d 47, 49 (2d Cir. 1992) ("If we were to address the merits of the attorney's fees award itself, we would have reservations about the amount of attorney's fees assessed in the absence of some affirmative indication by the district court that it had considered plaintiff's financial standing when it granted the defendant's motion.") (citing Faraci).

KCG for its part does not address the applicability of this consideration at all.  While Khandekar is hardly indigent, ignoring the disparity in wealth here would result in a fee award that effectively bankrupts Khandekar while only marginally improving KCG's financial situation.  Given the financial disparity between the parties, and in light of Khandekar's responsibility for costs as described in the next section, this Court finds that a further reduction of 50% in the lodestar is appropriate, for a total award of $344,018.00.

B. Costs

Khandekar challenges the $336,640.51 in costs sought by KCG during this case, arguing that the costs for an investigation by a cyber-security consultant called Mandiant lack any description and appear to include work on different matters, and thus should be denied in their entirety.  Defense Opp. at 21-22.  He also argues that the costs for an expert report of Dr. Bruce Hartley of Arete Advisors should be disallowed because the invoices similarly lack descriptions and the report was never used anyway, making it unreasonable.  Id. at 22.  Khandekar also challenges the travel and meal expenses of KCG's attorneys as not compensable, and broadly asserts that "the remainder of KCG's expenses are inflated or unreasonable, or both."  Id. at 23.

1. Investigation and Expert Costs

KCG argues that the Mandiant costs have already been ordered paid by Judge Nathan's opinion and order, and thus the entire expenditure must be awarded under the doctrine of the law

26

of the case.  Pl. Reply at 16.  But as pointed out by Khandekar, Judge Nathan did not rule on the reasonableness of those incurred costs.  Defense Opp. at 21; SJ Op. at 17.  Certainly, Khandekar is "obligated to pay for the investigation," SJ Op. at 17, but not if KCG has failed to justify the amounts billed as reasonable.  Thus, we must consider whether KCG has borne its burden of proving that the $194,382.28 sought for the Mandiant investigation was reasonably incurred.

KCG does not even address Khandekar's argument that Mandiant's seven invoices include no description of work performed.  In the portion of its brief addressing the Arete invoices, KCG argues that Khandekar "fails to provide any legal basis for his contention that cost invoices must have the same level of detail as attorney invoices."  Pl. Reply at 17.  But as KCG itself acknowledged in its initial memorandum, "[t]he reasonableness of these costs should be assessed on the same basis as KCG's attorney's fees."  Pl. Mem. at 16 (citing Howmedica Osteonic Corp. v. Zimmer, Inc., 2018 WL 2378406, at *18 (D.N.J. May 23, 2018)).  And a New Jersey appellate court has held that for an award for investigative costs, "the approach to be utilized is analogous to that involved in the awarding of counsel fees."  See Poritz v. Stang, 288 N.J. Super. 217, 221 (App. Div. 1996).  Poritz provides that a

> record must be developed as to the actual hours expended on the investigation,
> keeping in mind that actual time expended does not necessarily equate with
> reasonable time. . . .  Second, the judge must determine the reasonableness of the
> hourly rate employed.  This will depend on the rate prevailing in the community
> for similar work. . . .  [The] method by which the hourly rate has been determined
> by the [party seeking costs] must be set forth with specificity.  Only by analyzing
> a detailed breakdown of how the rate was calculated can the judge determine its
> rationality.

Id. at 222 (internal citations omitted); accord Matter of Helfmann, 2020 WL 2790437, at *15 (N.J. Super. Ct. App. Div. May 29, 2020) (citing Poritz).  Under a similar standard used in federal court, "[a] petition for costs must be specific enough to allow the Court to determine if

the costs claimed are unreasonable for the work performed." <u>Howmedica Osteonics Corp.</u>, 2018 WL 2378406, at *18 (citing <u>Loughner v. University of Pittsburgh</u>, 260 F. 3d 173, 181 (3d Cir. 2001)).  While the New Jersey case law developed in the context of statutory fees applications, New Jersey courts considering contractual fee-shifting provisions often cite to case law governing statutory fee applications.  <u>See</u> <u>Litton Indus.</u>, 200 N.J. at 386.

Here, the materials submitted by KCG relating to Mandiant's investigation fail to give any basis on which we could judge the reasonableness of the number of hours submitted or the reasonableness of the hourly rate.  <u>See</u> Docket # 117, Exh. 9.  The Court has been provided only with the invoices, which are sparse, listing merely the number of hours and the rate charged ($400 an hour).  <u>Id.</u>  These invoices bill for hundreds of hours of work without any indication at all of what was done during those hours.  Also, there is no evidence in the record indicating that the rates charged by Mandiant for its work were reasonable because KCG has put forth no evidence that Mandiant's rates conformed with the "rate prevailing in the community for similar work." <u>Poritz</u>, 288 N.J. Super. at 221 (internal citation omitted).

Notwithstanding these lacunae, this Court assumes that some portion of this fee was reasonable given KCG's reliance on Mandiant's work.  But in the absence of information justifying either the hours or rates, the Court must heavily discount the claimed costs to comply with its obligation to award only a reasonable fee.  <u>Litton</u>, 200 N.J. at 388.  Accordingly, this Court will reduce the claimed costs associated with Mandiant's investigation by 80%, (or $155,505.82) to $38,876.46.

Khandekar also challenges the application for $79,773.58 as reimbursement for invoices from Arete Advisors, <u>see</u> First Kaplan Decl., Exh. 11, which produced a report from a Bruce C. Hartley, <u>see id.</u>, Exh. 10, for similar reasons, adding that it should be rejected also because it

28

"provided no benefit whatsoever to KCG, which did not even include it as an exhibit to its summary judgment papers."  Defense Opp. at 22.  While this Court rejects the latter argument as meritless — an expert report may be prepared exclusively for trial, as was the case here (Pl. Reply at 16) — it is true that the invoices suffer from the same lack of detail required by New Jersey law.  Poritz, 288 N.J. Super. at 221.  That is, the invoices simply list the number of hours and an hourly rate.  See First Kaplan Decl., Exh. 11.

The Arete Advisors invoices stand on a different footing from the Mandiant invoice, however, in that there is evidence that the expert produced a report that was provided to the other side and that the expert was actually deposed.  Pl. Reply at 17.  But without demonstrating that the hours billed were justified, or that the rates charged — $750 an hour for the main expert, Dr. Bruce Hartley — were comparable to prevailing expert rates, New Jersey law does not allow this Court to simply accept without explanation the proffered invoices as reasonable.  Accordingly, this Court will reduce the claimed costs associated with Arete's report by 50%, to $39,886.79.

2.  Other Costs

Khandekar challenges travel and meal expenses of KCG's counsel.  Defense Opp. at 23. While travel expenses are normally recoverable,  see Jarwick Developments, Inc. v. Wilf, 2018 WL 2449133, at *28 (N.J. Super. Ct. App. Div. June 1, 2018), the problem here is that the travel was for an out-of-state attorney to come to New York.  See Pl. Reply at 8 n.3.  It would be one thing if the reasonable rate for this individual had been found to be less than the reasonable rate for attorneys in the New York area.  See Jarwick, 2018 WL 2449133, at *27 (approving travel expenses for out-of-state attorney where the use of that attorney had saved "defendants an extraordinary amount of money by charging his billable rate in Baltimore and [that] in order to do that he had to get up to New Jersey to conduct this trial") (alterations in original).  But for the

reasons already described, the hourly rate sought for that attorney (not actually identified by
KCG but presumably Mr. Dugan from Chicago, who charged between $650 and $880 per hour
(Second Kaplan Decl., Exh. 3 at 1, 21)) is in fact more than the amount we determined to be
compensable for an attorney from this jurisdiction.  See generally  U.S. ex rel. Feldman v. Van
Gorp, 2011 WL 651829, at *3 (S.D.N.Y. Feb. 9, 2011) ("expenses and fees related to travel must
be excluded from an award of attorneys' fees if the hypothetical reasonable client who wishes to
spend the least amount necessary to litigate the matter would have retained local counsel")
(internal citation and quotation marks omitted).  Thus, we will reduce the requested costs by
$17,392.89, the amount identified by Khandekar (and unchallenged by KCG) as sought by KCG
for "business travel and fees," Defense Opp. at 23, as those costs would not have been incurred
by the hypothetical reasonable client hiring a local attorney.  Feldman, 2011 WL 651829, at *3.

   The Court finds the rest of KCG's costs adequately documented by Baker & McKenzie's
and Seyfarth Shaw's invoices, except for those related to the arbitration proceedings, which this
Court has found not recoverable due to the arbitration agreement.  See Part A.2.c above.
Because KCG did not separate out the arbitration related costs from the non-related costs, the
court will exclude entirely those costs incurred while the arbitration progressed, as identified in
Plaintiff's Reply.  See Pl. Reply at 17, n. 9 (listing invoices).  Thus, the amount incurred is
reduced by $8,937.41.

   The total costs sought were $336,640.51.  The various reductions described above
amount to $221,722.91, leaving $114,917.60 in costs.  The same equitable considerations that
counseled a reduction in the lodestar fee amount counsel also counsel a reduction in the costs.
See Michael v. Robert Wood Johnson Univ. Hosp., 398 N.J. Super. 159, 167 (App. Div. 2008).
Accordingly, the Court will apply the same 50% reduction to the remaining costs.  Thus, KCG

should be awarded a total of $57,458.80 in costs.

     C.  <u>Post-Judgment Interest</u>

Finally, KCG argues that because "[d]istrict courts in the Second Circuit have determined that post-judgment interest pursuant to [28 U.S.C.] § 1961 begins to accrue from the date of judgment establishing the right to an award of attorney's fees," "KCG should therefore be awarded post-judgment interest accruing from March 12, 2020 — the date of the summary judgment decision." Pl. Mem. at 17. Khandekar responds by arguing that "[b]y its terms, the SJ Opinion is an Opinion and Order, not a judgment . . . so it does not trigger post-judgment interest." Defense Opp. at 25.

The Second Circuit has held that "[p]ostjudgment interest is designed to compensate the plaintiff for the delay it suffers from the time damages are reduced to an enforceable judgment to the time the defendant pays the judgment." <u>Andrulonis v. United States</u>, 26 F.3d 1224, 1230 (2d Cir. 1994). Here, of course, there is no "enforceable" judgment for attorney's fees because the dollar amount of that judgment has not been ascertained, let alone put in the form of a money "judgment" or anything equivalent to it. The Court is aware that a number of cases in this Circuit have permitted post-judgment interest to run from the date when "the party becomes entitled to the award even if that award is not quantified until a later point." <u>King v. JCS Enterprises, Inc.</u>, 325 F. Supp. 2d 162, 175 (E.D.N.Y. 2004) (quoting <u>Albahary v. City & Town of Bristol, Conn.</u>, 96 F. Supp. 2d 121, 123 (D. Conn. 2000)). The theory of such an award is that the losing party "suffers no prejudice from any delay in quantifying the award because it has use of the money in the interim and because the statutory interest rate is tied to the U.S. Treasury Bill rate." <u>Albahary</u>, 96 F.Supp.2d at 123 (internal citation and quotation marks omitted). The origin of this practice in this Circuit appears to be the case of <u>Williamsburg Fair Hous. Comm. v. Ross-</u>

Rodney Hous. Corp., 599 F. Supp. 509, 523 (S.D.N.Y. 1984), which in turn referred to the fact that "interest is available on an award of attorney's fees under [42 U.S.C.] § 1988." Id. (internal citation and quotation marks omitted).  We see two problems with following this line of case law, however.

First, the New Jersey Supreme Court has held that New Jersey law does not permit interest to run pre-judgment on an award of attorney's fees.  See N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., a Div. of Keller Sys., 158 N.J. 561, 575 (1999).  It has specifically held that "there is no contractual basis for prejudgment interest on the attorneys' fees" and that such an award "is inappropriate and without legal or logical foundation," because "[a]bsent a controlling contractual provision, permitting prejudgment interest on attorneys' fees would be contrary to our strong public policy disfavoring shifting of attorneys' fees." Id. at 575-76 (internal citation and quotation marks omitted).  It would simply constitute an end-run around this rule to denominate interest accrued prior to judgment as "post-judgment" interest.

Additionally, whatever potential unfairness may exist in allowing a losing party to benefit from the use of money prior to a judgment being entered cannot be solved by interpreting a statute that is triggered only where there is entry of a "judgment," 28 U.S.C. § 1961, and a judgment that the Second Circuit has held must be "enforceable," Andrulonis, 26 F.3d at 1230, to apply to an unenforceable opinion and order ruling on a summary judgment motion.

The Second Circuit in Andrulonis specifically warned that "[w]hen calculating postjudgment interest under section 1961, courts do not enjoy some amorphous equitable power to select a date other than the 'date of the entry of the judgment' to trigger the running of interest, even if their laudable aim is to effectuate the compensatory purpose of the postjudgment interest statute." Id. at 1233.  We view this clear statement of law as ending the matter.  For these

reasons, we respectfully disagree with the result reached in <u>King</u>, 325 F.Supp.2d at 175, and the other cases awarding statutory post-judgment interest on attorney's fees prior to entry of judgment.

In sum, statutory post-judgment interest on the award to KCG should run from the date of the judgment.[5]

IV.  <u>CONCLUSION</u>

For the foregoing reasons, KCG's motion for attorney's fees (Docket # 201) should be granted to the extent of awarding a judgment against defendant Rohit Khandekar, in the amount of $401,476.80.  Post-judgment interest should run from the date judgment is entered at the statutory rate provided in 28 U.S.C. § 1961.

**PROCEDURE FOR FILING OBJECTIONS TO THIS
REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections.  <u>See also</u> Fed. R. Civ. P. 6(a), (b), (d).  A party may respond to any objections within 14 days after being served.  Any objections and responses shall be filed with the Clerk of the Court.  Any request for an extension of time to file objections or responses must be directed to Judge Nathan.  If a party fails to file timely objections, that party <u>will not be permitted to raise any objections to this Report and Recommendation on appeal</u>.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wagner & Wagner, LLP</u>

---

[5]  For what it is worth, we note that one aspect of KCG's effort to seek interest on the attorney's fee award from March 12, 2020, the date of the Opinion and Order, is not even supported by the policy argument articulated in <u>King</u>.  If KCG's request were granted in full, KCG would receive interest even on the portion of the fees it spent preparing the fee application itself — all of which post-date March 12, 2020.  Thus, KCG would obtain interest on some of its damages for a time period before it even incurred those damages.

v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir.

2010).

Dated:  December 2, 2020
        New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge