

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KCG Holdings, *et al.*,

                          Plaintiffs,

                    –v–

Khandekar,

                          Defendant.

17-cv-3533 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Both parties object to the Magistrate Judge's Report and Recommendation awarding Plaintiffs $401,476.80 in attorney's fees and costs. For the reasons stated below, the Court adopts the Report and Recommendation in full.

## I.    BACKGROUND

A detailed account of the facts underlying this action can be found in the Court's March 12, 2021 Opinion and Order. Dkt. No. 175. In that Opinion, the Court granted Plaintiffs summary judgment on their claim for breach of contract and their claims for misappropriation of trade secrets under federal and state law, as well as on Defendant's counterclaims. *Id.* The Court also enjoined Defendant from using any trade secret information he improperly acquired from Plaintiffs and ordered Defendant to pay Plaintiffs' attorney's fees and costs. *Id.*

On May 1, 2020, Plaintiffs filed a motion or attorney's fees and costs. Dkt. No. 183. Plaintiffs seek $3,238,493.53 in attorney's fees and $336,640.51 in costs, for a total of $3,575,134.04. *Id.* The Court referred this motion to Magistrate Judge Gorenstein for Report &

Recommendation. Dkt. No. 197. On December 2, 2020, the Judge Gorenstein issued a Report & Recommendation, in which he recommended that Plaintiffs be awarded $344,018.00 in attorney's fees and $57,458.80 in costs, for a total of $401,476.80. Dkt. No. 215. The parties both filed timely objections. Dkt. Nos. 218, 220.

## II.     DISCUSSION

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Because the parties filed timely objections to the Report and Recommendation, the Court will review de novo "those portions of the report or specified proposed findings or recommendations to which" objections were made. *Id*. For the reasons explained below, the Court denies all of the parties' objections and adopts the Report and Recommendation in full.

### A.   Plaintiffs' Objections

Plaintiffs offer multiple objections to the Report and Recommendation, none of which succeed. *First*, Plaintiffs argue that the Report improperly reduced attorney billing rates in calculating the attorney's fees to $595-$427 per hour. Dkt. No. 218 at 3-5. Plaintiffs argue that in determining the reasonable hourly rate, the Report should have considered the community rate for lawyers of comparable skill, experience and reputation, such as Simpson Thacher & Bartlett, Paul Weiss Rifkind Wharton Garrison LLP, Wilkie Farr & Gallagher LLP, and Gibson, Dunn & Crutcher LLP. *Id.* at 4-5.

The Report, however, correctly concluded that awarding Plaintiffs attorney's fees at the same rate that these firms charge their clients was not a calculation of a "reasonable hourly rate." The "reasonable hourly rate" for purposes of attorney's fees shall be "those that would be

2

charged an adequately experienced attorney possessed of average skill and ordinary competence," not those of "the most successful or highly specialized attorney in the context of private practice." Dkt. No. 215 (quoting *Singer v. State*, 95 N.J. 487, 500 (1984)). The law firms referenced by Plaintiff charge the highest rates in New York precisely because they are not of "average skill and ordinary competence." *Id.* The Report correctly found the rates proposed by Defendant, which were made in reference to a much wider swath of New York law firms, were reasonable community rates. As the Report correctly explains, Plaintiffs were free to choose highly skilled, specialized counsel to litigate their claims against Defendant, but they are only entitled to receive attorney's fees based on what an attorney of average skill and ordinary competence would charge.

*Second*, Plaintiffs argue that the Report also improperly calculated the reasonable rates for non-attorneys. Dkt. No. 218 at 10. As to the fees for paralegals, Plaintiffs claim that in determining the standard rate in this district, the Report improperly relied on decisions in the Southern District, such as *Lujuan v. JPG LLC*, Case No. 18-cv-0916, 2018 U.S. Dist. LEXIS 96157, at *6 (S.D.N.Y. June 6, 2018), because those cases relied on cases from the Eastern District. *Id.* Plaintiffs also claim that Judge Gorenstein should not have applied the standard rate at all because the paralegals they hired have significant experience, and that Judge Gorenstien also should not have applied the rate of a specialized paralegal to their e-discovery experts because their e-discovery team is of superior qualifications and expertise for that position. *Id.* In support of these claims, Plaintiffs cite to the Declaration of Jacob M. Kaplan that was submitted on January 6, 2021 with their objection the Report & Recommendation, Dkt. No. 224.

The Report did not err in assigning rates for paralegals and e-discovery specialists. As to the standard rate for paralegals, the Report correctly relied on the decisions of other courts in the

Southern District in determining what other courts in the Southern District have found to be a reasonable rate for paralegals.  Moreover, in the Report, Judge Gorenstein decided to apply the standard rate "because this court ha[d] not been provided with any evidence justifying a significantly higher rate."  Dkt. No. 215 at 11.  Plaintiffs now argue that to the Court that their paralegals do in fact have significant experience, but the time to present evidence of that claim has passed.  *See New York City Dist. Council of Carpenters Pension Fund v. Forde*, 341 F. Supp. 3d 334, 338 (S.D.N.Y. 2018) ("In objecting to a magistrate's report before the district court, a party has 'no right to present further testimony when it offers no compelling justification for not offering the testimony at the hearing before the magistrate.'") (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994)).  Likewise, Plaintiffs may not now introduce evidence of their e-discovery team's qualifications and experience for the first time in an attempt to justify a higher rate.  *Id.*

*Third*, Plaintiffs argue that the Report's "Limited Success" reduction in hours for the attorney's fees calculation was unjustified.  Dkt. No. 218 at 12.  Specifically, Plaintiffs claim that the Report should not have considered the Plaintiffs' grant of an injunction to be narrower than the initial injunction that Defendant had consented to at the outset of the litigation because that injunction was preliminary and did not permanently enjoin Defendant.  *Id.*  This argument fails.  For one, Plaintiffs declined to raise it prior to filing their objection to the report.  *See Ahmed v. Decker*, No. 17-CV-0478 (AJN), 2017 WL 6049387, at *5 (S.D.N.Y. Dec. 4, 2017) (declining to consider new arguments raised in objections to a Report & Recommendation).  And in any event, Plaintiffs interpretation of the stipulation is implausible.  The plain terms of the stipulation impose no such time limit, *see* Dkt. No. 29, and the fact that Defendant's argued in its summary

4

judgment papers against the permanent injunction requested by Plaintiffs, a request that was far broader than the stipulation, does not indicate that the stipulation itself was no longer in place.

     Plaintiffs also argue that the Report gave "insufficient weight" to the fact that Plaintiffs fended off Defendant's counterclaims in considering Plaintiffs success. Dkt. No. 218 at 13-14. The Court disagrees. As Judge Gorenstein stated, "obtaining an expansive injunction" was "the main focus of [Plainitffs'] suit," and the relief obtained was "limited compared to the relief sought," thus a significant reduction in hours was appropriate. Dkt. No. 215 at 23. Still, Judge Gorenstein explicitly accounted for Plaintiffs' success on defending counterclaims in making a determination of a reasonable reduction. *Id.* (recognizing that unnecessary expenditures on failed request for permanent injunction were "not the whole story" because of Defendant's counterclaims). The Court agrees with that determination.

     *Fourth*, Plaintiffs argue that the Report should not have further reduced the award because of the financial disparity between the parties, pointing to Third Circuit and New Jersey case law. Dkt. No. 218 at 14-16. None of these cases disturb the conclusion of the Report that a reduction is warranted. First, Plaintiffs' citations refer to interpretations of attorney's fees provisions in unrelated federal or state statutes, not contractual provisions. *See E.C. v. Philadelphia Sch. Dist.*, 644 F. App'x 154, 157 (3d Cir. 2016) (interpreting the attorney's fees provision in the IDEA); *Child Evangelism Fellowship of N.J., Inc. v. Stafford Twp. Sch. Dist.*, 2006 U.S. Dist. LEXIS 62966, *2 (D.N.J. Sept. 5, 20016) (interpreting the attorney's fees provision in 42 U.S.C. 1988); *Failla v. City of Passaic*, 146 F.3d 149, 153 (3d Cir. 1998) (interpreting the attorney's fees provision in New Jersey's Law Against Discrimination). And in *E.C.* and *Failla*, the Third Circuit did not state that district courts are barred from considering the financial condition in determining attorney's fees generally, but simply held that declining to do

5

so in those cases so was not an abuse of discretion.  *See Failla*, 146 F.3d at 161; *E.C.*, 644 Fed App'x at 158.  The Report soundly reasoned that in New Jersey, contractual attorney's fees shifting provisions are to be narrowly construed in light of the general policy disfavoring such awards, and thus in line with federal and New Jersey case law, courts may properly consider the financial condition of the parties in granting reasonable attorney's fees and costs.  Dkt. No. 215 at 25.  *See Michael v. Robert Wood Johnson Univ. Hosp.*, 398 N.J. Super. 159, 167 (App. Div. 2008) ("In our judgment, the ability of a party to pay an award of counsel fees is inherent in the concept of analyzing what is a reasonable fee.").  Moreover, the Court denies Plaintiffs' argument against an equitable reduction in costs, *see* Dkt. No. 215 at 20, for the same reasons.

*Fifth*, Plaintiffs claim that the Report improperly deducted 74.5 hours related to a FINRA investigation twice, because "all of the hours properly allocated to" the FINRA investigation were included in the 273 hours related to the arbitration that were deducted in the Report.  Dkt. No. 218 at 16.  However, as Judge Gorenstein noted, "KCG did not respond to the arguments" raised by Defendant regarding the exclusion of hours on the FINRA investigation "in its reply brief," and thus had "not met its burden of showing its entitlement to these hours."  Dkt. No. 215 at 18.  Reviewing Plaintiffs exhibits and papers in support of its motion, there is no basis to conclude that the 273 hours allocated to arbitration necessarily included the hours related to the FINRA investigation, and Plaintiffs declined to make this argument before Judge Gorenstein. The Court therefore will not grant Plaintiffs these hours now.

*Sixth*, Plaintiffs argue that the Report erred by declining to award Plaintiffs the full cost of the Mandiant investigation because the Court ordered that Defendant was "obligated to pay for the investigation." Dkt. No. 218 at 18 (citing Dkt. No. 175 at 17, 38).  Plaintiffs are correct that the Court held that Defendant was obligated by the terms of the parties' employment

6

contract to pay attorney's fees and costs, and that the Mandiant investigation was one of those costs.  Dkt. No. 175 at 17, 38.  But while the Court recognized how much Plaintiffs paid for that investigation, the Court did not state whether that amount was reasonably incurred and did not order Defendant to pay any particular amount.  *Id.*  Plaintiffs were then permitted to move for attorney's fees and costs, as they did, and Judge Gorenstein was to determine under New Jersey law whether those costs were reasonable.  Dkt. No. 215 at 27 (citing *Poritz v. Stang*, 288 N.J. Super. 217, 221 (App. Div. 1996)).  The Court agrees with Judge Gorenstein's assessment that, while Plaintiffs are entitled to some portion of the Mandiant investigation cost, that Plaintiffs had failed to provide information justifying the cost of that investigation, and therefore an 80% reduction was appropriate.

*Seventh*, and lastly, Plaintiffs argue that the Report erred cutting Plaintiffs' request for expert costs in half.  Dkt. No. 218 at 18-19.  Judge Gorenstein did so because, while there was at least an expert report that was produced, Plaintiffs failed to demonstrate that the hours billed by the expert were justified and that the rates charged were reasonable.  Dkt. No. 215 at 29.  Plaintiffs now object on the basis that the expert's report explained the work that was involved, thus an explanation of the hours billed was not necessary, and that the expert's hourly rate is consistent with those permitted in the Southern District.  Dkt. No. 218 at 18-19.  While the Court agrees with Plaintiff that some of the work their expert performed can be gleaned from the expert report and was reasonably incurred, the Report did not err in considering most of the invoices to be lacking explanation or justification and in deciding to consequentially reduce these fees.  Moreover, the Court will not consider Plaintiffs' arguments regarding the reasonableness of its expert's rates, which it declined to provide in its opening or reply brief in support of its motion

7

for attorney's fees and costs. *See Ahmed,* 2017 WL 6049387, at *5. The Court therefore agrees with the Report's 50% reduction of expert costs.

### B. Defendant's Objections

The Court denies all of Defendant's objections as well. *First,* Defendant argues that the Report erred by determining Plaintiffs to be the prevailing party without further analysis. Dkt. No. 220 at 8. Under New Jersey law, "a prevailing party can recover attorney's fees if they are expressly provided for by statute, court rule, or contract." *Litton Indus., Inc. v. IMO Indus., Inc.,* 200 N.J. 372, 385 (2009) (quotations omitted). "Plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *R.M. v. Supreme Court of New Jersey*, 190 N.J. 1, 9-10 (2007) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7 (1983)). Though Defendant is correct that Plaintiffs did not achieve the broad injunction originally sought, Plaintiffs succeeded in this litigation. The Court granted Plaintiffs summary judgment on three of their four claims (including breach of the employment contract), dismissed all of Defendant's counterclaims, and then granted Plaintiffs an injunction. As described below, though that injunction was narrower in scope than the injunction that was already negotiated, it was still of value because the Court determined that Defendant misappropriated Plaintiffs' trade secrets and enjoined him from using or disseminating that information. Therefore, Plaintiffs are prevailing parties and the Court was permitted to award them attorney's fees. Moreover, the Report correctly determined that the Court's decision to award Plaintiffs attorney's fees & costs was the "law of the case," and that there was no basis not to adhere to that decision. *See In re DNTW Chartered Accountants Sec. Litig.*, 172 F. Supp. 3d 675, 686 (S.D.N.Y.), *aff'd sub nom. In re DNTW Chartered Accountant Sec. Litig.*, 666 F. App'x 78 (2d Cir. 2016) ("[W]hen a court has

8

ruled on an issue, that decision should generally be adhered to by that court in subsequent stages of the same case unless cogent and compelling reasons militate otherwise.").

*Second*, Defendant argues that Plaintiffs are not entitled to fees because they obtained nothing of value at the time of judgment. Dkt. No. 220 at 9. While Defendant is correct that the *scope* of the injunction the Court eventually granted was in fact narrower than in the original stipulation, Plaintiffs obtained a judgment that expressly held that Defendant's conduct constituted a misappropriation of trade secrets, and the injunction dictated that Defendant could not use or disseminate that information in any way. No such determination had been made at the time Defendant agreed to the stipulation, which simply barred him from "using, possessing or accessing any of Plaintiffs' confidential and proprietary information for any purpose." Dkt. No. 220 at 10. Thus, the Report correctly determined that Plaintiffs are in fact entitled to fees because of their success, and also that those fees should be reduced because that success was limited. For the same reasons, the Court rejects Defendant's argument that the Court should "further reduce any award of KCG's expenses by at least an additional 75%" as a result of its limited success. Dkt. No. 218 at 18.

*Third,* Defendant argues that the award should be modified to remove all fees incurred after the parties entered into the stipulation on July 29, 2017 – fees which Judge Gorenstein recognized would be unnecessary except for the fact that they were spent on defending against Defendant's counterclaims – because those counterclaims claims were not "incur[red] as a result of" nor did they "arise[e] from . . . [a] breach or default" of the parties' contract. Dkt. No. 220 at 12. This argument fails. As Judge Gorenstein correctly recognized, "the defense of the counterclaims required proving Khandekar's breach of the employment agreement." Dkt. No. 215 at 23. Defendant's breach is what lead Plaintiffs to initiate claims against him and decline

9

to pay him non-compete payments, and these actions are precisely what Defendant brought counterclaims for, thus Plaintiff's need to defend against these counterclaims directly resulted from Defendant's breach of the agreement. To hold otherwise would be a formalistic distinction that would preclude Plaintiffs from recovering the costs of Defendant's breach simply because of the manner in which that breach made its way into the litigation. *See AT&T Corp. v. JMC Telecom, LLC*, 2005 U.S. Dist. LEXIS 36559, *15, 2005 WL 2086194 (permitting attorney's fees for litigating counterclaims where the "facts giving rise to" those claims would "have been at issue in litigating the" breach of contract claims.). To the contrary, the parties' contract expressly allows for attorney's fees and costs that Plaintiff "incurs as a result of or arising from . . . a breach" of the contract. Dkt. No. 220 at 12.

*Fourth*, while the Report granted an overall reduction of 70% on Plaintiffs fees because the number of hours claimed were excessive and the relief that Plaintiffs obtained was limited compared to the relief sought, Defendant argues for a 96% reduction. Dkt. No. 220 at 14. Defendant's primary argument is to point to the disparity in his legal bills compared to Plaintiffs, but the Court sees no reason that Plaintiffs' recovery of attorney's fees and costs should necessarily be limited to the amount that Defendant, who lost, decided to expend on litigating this case. The Court agrees with the recommendation in the Report, which already considered the excessive amount of time and personnel that Plaintiffs employed in this case and Plaintiffs' limited success, that a 70% reduction was appropriate. For the same reasons, the Court declines Defendant's request to "reduce KCG's remaining expenses" by 67%, on the grounds that the amount was three times what Defendant incurred. Dkt. No. 218 at 18.

*Fifth*, Defendant asks the Court to eliminate the award for Plaintiffs' investigation fees and expert fees because Plaintiffs failed to supply sufficiently detailed time entries. Judge

10

Gorenstein already considered the lack of detail in these entries when recommending an 80% reduction in the investigation fees and 50% reduction in the expert fees.  The Court agrees with the Report's conclusion that, while the lack of detail substantiating the fees warrants a reduction, there was sufficient information to award fees generally.

*Sixth*, and lastly, while the Report reduced Plaintiffs' award by 50% because of the financial disparity between the parties, Defendant asks the Court to reduce Plaintiffs' award even further to "a more reasonable amount that would not force Mr. Khandekar to sell his home." Dkt. No. 220 at 20.  Defendant argues that "the final award of $401,476.80 recommended in the R&R constitutes approximately 80% of Mr. Khandekar's wealth and would barely register on KCG's $10 billion balance sheet."  Dkt. No. 220 at 19.  Defendant presented this information to Judge Gorenstein, and the Report already recognized Defendants' limited assets in granting a significant equitable reduction.  Dkt. No. 215 at 26 (noting the need to avoid a fee award that "effectively bankrupts Khandekar while only marginally improving KCG's financial situation."). Defendant declined, however, to disclose his salary in his briefings before the Court or Judge Gorenstein, which would have provided a fuller picture of his ability to pay.  Thus, Defendant has not demonstrated that a further reduction of the award beyond the significant 50% cut recommended in the Report is warranted.

### III. CONCLUSION

For the reasons stated above, the Court adopts the Report & Recommendation in full and awards Plaintiffs $401,476.80 in attorney's fees and costs.  This resolves Dkt. Nos. 201, 215. The Clerk of Court is respectfully directed to enter judgment and to close this case.

SO ORDERED.

Dated: February 17, 2021

New York, New York

_____

ALISON J. NATHAN

United States District Judge